**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

|                                          |   |                        |
|------------------------------------------|---|------------------------|
| Young America's Foundation,              | ) |                        |
|                                          | ) |                        |
| Plaintiff,                               | ) |                        |
|                                          | ) |                        |
| v.                                       | ) | Case No. 1:07-CV-01351 |
|                                          | ) |                        |
| Robert M. Gates, Secretary,              | ) |                        |
| United States Department of              | ) |                        |
| Defense                                  | ) |                        |
|                                          | ) |                        |
| Defendants.                              | ) |                        |

---

## DEFENDANT'S MOTION TO DISMISS

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, defendant Robert M. Gates, Secretary of the United States Department of Defense, respectfully moves this Court to dismiss this action.  The grounds in support of this motion are set out more fully in the attached memorandum.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

CARL J. NICHOLS
Deputy Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

VINCENT M. GARVEY
Deputy Branch Director

/s/ Paul G. Freeborne
PAUL G. FREEBORNE
Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW,
Washington, D.C. 20530
Tel: (202) 353-0543
Fax: (202) 616-8460

Dated: October 9, 2007

*Counsel for the Federal Defendant*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| Young America's Foundation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:07-CV-01351 |
| | ) | |
| Robert M. Gates, Secretary, | ) | |
| United States Department of | ) | |
| Defense | ) | |
| | ) | |
| Defendants. | ) | |

_____

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE
SECRETARY'S MOTION TO DISMISS**

PETER D. KEISLER
Assistant Attorney General

CARL J. NICHOLS
Deputy Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

VINCENT M. GARVEY
Deputy Branch Director

PAUL G. FREEBORNE
Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW,
Washington, D.C. 20530
Tel: (202) 353-0543
Fax: (202) 616-8460

Dated:  October 9, 2007                    *Counsel for the Federal Defendant*

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.    The Solomon Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   The Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.    No Waiver of Sovereign Immunity Exists To Permit YAF's
      Private Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      A.    28 U.S.C. §§ 1331 and 1361 Do Not Waive Sovereign Immunity . . . . . . . . . . . 6

      B.    The Solomon Amendment Does Not Create A Private Right of Action . . . . . . . . 6

II.   YAF Lacks Associational Standing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      A.    YAF Has Failed to Show That Any of the Students it Purports to
            Represent Have Suffered and Particularized Injury-in-Fact . . . . . . . . . . . . . . . 13

      B.    YAF Has Also Failed to Show Causation and Redressability . . . . . . . . . . . . . . 16

III.  Mandamus Is An Inappropriate Remedy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## INTRODUCTION

Young America's Foundation ("YAF"), an association, purports to sue on behalf of students at the University of California at Santa Cruz ("UCSC") who allegedly have been denied access to military recruiters at job fairs hosted by that institution because of faculty and student protests.  Complaint, ¶¶ 4, 8-22.  YAF asserts that UCSC is in violation of the Solomon Amendment (10 U.S.C. § 983).  That statute prohibits an institution of higher education from having a "policy or practice" that prevents military recruiters from gaining access to its campus. YAF seeks a declaratory judgment that UCSC is in violation of the statute by failing to quell such protests and allow such access, and a mandamus order compelling the Secretary to terminate the federal funding identified in the statute, including student financial assistance, to UCSC.

The Court lacks jurisdiction to hear YAF's claims.  YAF fails to point to any waiver of the United States' sovereign immunity that would allow it to privately invoke the provisions of the statute.  The only three statutes cited by YAF are the Solomon Amendment, the general grant of federal question jurisdiction, 28 U.S.C. § 1331, and the mandamus statute, 28 U.S.C. § 1361. None of these statutes create any waiver of sovereign immunity.  28 U.S.C. §§ 1331 and 1361 do not create any independent waiver of sovereign immunity; both statutes only apply where another waiver is present.   The Solomon Amendment similarly does not create any right of private action on the part of YAF or the students it purports to represent.  The statute instead vests authority in the Secretary to terminate federal funding to institutions that have a policy or practice of preventing military recruiters from accessing its campus.  Nothing in the language of the Amendment evinces an intent on the part of Congress to create a privately enforceable right.

1

YAF, moreover, lacks standing to sue.  While YAF apparently attempts to assert associational standing on behalf of students at UCSC who have purportedly been denied access to military recruiters, it must show that each student would have standing to sue in their own right.  Despite this burden, YAF fails to identify a single student among its membership and show that he or she has suffered a cognizable injury that is causally related to the generalized harm alleged.  YAF also fails to show that any specific, individualized injury that may have been suffered will likely be redressed by the relief sought.  According to the Complaint, the obstacle presented to military recruiters is the result of demonstrations by faculty and students who are not before the Court.  Even if the Court were to grant the relief requested, it is impossible to know whether the relief would quell any such protests and permit any recruiter access that was allegedly denied to UCSC's campus.

Lastly, and at a minimum, no basis exists for the Court to enter a mandamus order against the Secretary compelling the termination of federal funding.  Such an order is a drastic remedy, and one that it is only granted where the responsibility is a ministerial one.  Here, by contrast, the Secretary's decision regarding whether to take enforcement action against an institution is a matter in which he has discretion.  YAF's request, therefore, can be readily dismissed on the merits.

## **BACKGROUND**

### I.     **The Solomon Amendment**

The Solomon Amendment denies federal funding to an institution of higher education that "has a policy or practice . . . that either prohibits, or in effect prevents" the military "from gaining access to students . . . on campuses, for purposes of military recruiting in a manner that

is at least equal in quality and scope to the access to campuses and to students that is provided to any other employer." 10 U.S.C. § 983(b). The Amendment was enacted in 1994, National Defense Authorization Act for Fiscal Year 1995, Pub. L. No. 103-337 § 558, 108 Stat. 2663, 2776, as a means to foster the military's recruitment of talented professionals for the national defense. See 140 Cong. Rec. H3860-03 (floor statement of Sponsor, Representative Gerald Solomon).[1]

## II.    The Complaint

The Young America's Foundation ("YAF"), an association allegedly organized to ensure "that young Americans understand and are inspired by the ideas of individual freedom, a strong national defense, free enterprise, and traditional values," Complaint ¶ 3, sues the Secretary of the Defense seeking to enforce what it views as a violation of the Solomon Amendment. YAF asserts that student and faculty protests at UCSC have forced military recruiters to flee job fairs at the institution, id. ¶¶ 8-14, and that the prospect of future protests at the institution has caused subsequent job fairs to be canceled. Id. ¶¶ 16-18. YAF seeks a writ of mandamus requiring the Secretary to determine that UCSC has a "policy or practice" that prohibits or, in effect, prevents military recruiters from gaining access to the UCSC campus, id. ¶¶ 23-28, and to withhold the federal funds identified in 10 U.S.C. ¶ 983(d)(1). Id. ¶¶ 29-31.

In support of jurisdiction, YAF cites the Solomon Amendment, the general grant of federal question jurisdiction, 28 U.S.C. § 1331, and the mandamus statute, 28 U.S.C. § 1361.

---

[1]    The Solomon Amendment was revised in 1999, Pub. L. No. 106-65, Div. A., Title IV, Subtitle E, § 549(a)(1), 2002, Pub. L. No. 107-296, Title XVII, § 1704(b)(1), (3), 116 Stat. 2314, and 2004, Pub. L. No. 108-375, Div. A., Title V, Subtitle F, § 552 (a)-(d), 118 Stat. 1911. The focus upon military readiness was not altered by any of these legislative revisions.

Complaint, ¶ 1.  YAF claims to represent "constituents who currently attend [UCSC] and who desire to interview with military recruiters at job fairs conducted by the UCSC on its campus but who, due to the [purported] failure of Defendant to enforce the Solomon Amendment, have been prevented from meeting with military recruiters on campus." Id. ¶ 4.  YAF fails to identify any individual "constituent" by name, explain the harm each has individually suffered, or how an order terminating federal funding to UCSC would stop the student and faculty protests that are purportedly blocking UCSC students from obtaining access to military recruiters.  Complaint.

YAF simply claims that the Secretary must perform this "non-discretionary, military duty with respect to UCSC."  Id. ¶ 26.  The statute, however, permits the Secretary to "determine[]" whether an "institution (or any subelement of such institution)" has such a policy or practice. 10 U.S.C. § 983(b).  Under the implementing regulations, "[a]n evaluation to determine whether a covered school maintains a policy or practice . . . shall be undertaken when . . . [m]ilitary recruiting personnel cannot gain entry to [a] campus, cannot obtain access to students on campus, or are denied access to student recruiting information[.]" 32 C.F.R. § 216.4(f)(1). "When requests by military recruiters to schedule recruiting visits or obtain student recruiting information are unsuccessful, the Military Service concerned shall seek written confirmation of the school's present policy from the head of the school through a letter of inquiry." Id. § 216.5(b)(1)(i). "If written confirmation cannot be obtained, oral policy statements or attempts to obtain such statements from an appropriate official shall be documented."  Id.  The Military Service shall  "[e]valuate responses to the letter of inquiry, and such other evidence obtained . . . , and submit such information to the [Assistant Secretary of Defense] the names and addresses of covered schools believed to be in violation of policies established" in the

regulations.  Id. § 216.5(b)(3).  UCSC has an established written policy permitting equal access to military recruiters.  See generally, http://www.ucop.edu/raohome/cgmemos/94-09.html.

To the extent students and faculty wish to voice their disapproval of the military's employment practices regarding those found to have engaged in homosexual conduct, the statute does not prohibit such protests and students and faculty remain free "to associate to voice their disapproval." Rumsfeld v. Forum for Academic and Inst. Rights, 547 U.S. 47, 69 (2006).  The Solomon Amendment neither limits what [schools] may say nor requires them to say anything.  [Schools] remain free under the statute to express whatever views they may have on the military's congressionally mandated employment policy, all the while retaining eligibility for federal funds." Id. at 60.  "As a general matter, the Solomon Amendment regulates conduct, not speech.  It affects what [schools] must do--afford equal access to military recruiters--not what they may or may not say." Id.(emphasis in original).

## ARGUMENT

### I.    No Waiver of Sovereign Immunity Exists To Permit YAF's Private Action

It is "axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."  United States v. Mitchell, 463 U.S. 206, 212 (1983).  A district court lacks jurisdiction over claims against the United States unless the United States' sovereign immunity has been explicitly waived.  Dep't of the Army v. Fed. Labor Relations Auth., 56 F.3d 273, 275 (D.C. Cir. 1995) (citing United States v. Sherwood, 312 U.S. 584, 586 (1941)).  Only Congress may waive sovereign immunity, and Congress must "unequivocally express its desire to do so" on the face of a statute.  Id. at 277 (internal citations omitted).  See also Tri-State Hosp. Supply Corp. v. United States, 341 F.3d 571, 575 (D.C. Cir.

2003) ("waiver of sovereign immunity must be 'unequivocally expressed' in the statutory text and strictly construed, in terms of its scope, in favor of the sovereign.") (internal quotation marks and citation omitted).

### A.    28 U.S.C. §§ 1331 and 1361 Do Not Waive Sovereign Immunity

YAF claims that the general federal question statute and the mandamus statute provide this Court with subject-matter jurisdiction. Complaint, ¶ 1. Neither of these statutes waive sovereign immunity. It is well settled that 28 U.S.C. § 1331, the general grant of federal question jurisdiction, does not waive the United States' sovereign immunity. See Swan v. Clinton, 100 F.3d 973, 981 (D.C. Cir. 1996). Nor does Section 1361, the mandamus statute. Id.; Brown v. Bush, 111 Fed. Appx. 614 (D.C. Cir. 2005); Romasko v. United States, 2007 U.S. Dist. LEXIS 72472, at * 32 (D.D.C. Sept. 30, 2007); Jasperson v. Federal Bureau of Prisons, 460 F. Supp. 2d 76, 83 (D.D.C. 2006).

### B.    The Solomon Amendment Does Not Create A Private Right of Action

That leaves the Solomon Amendment as the only cited basis for jurisdiction. Complaint, ¶ 1. But that statute likewise does not waive sovereign immunity for YAF's private suit. Even if the Court were to credit YAF's allegations that UCSC is in violation of the Solomon Amendment, "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." Cannon v. Univ. of Chicago, 441 U.S. 677, 688 (1979). See also Tax Analysts v. Internal Revenue Service, 214 F.3d 179, 185 (D.C. Cir. 2000) ("violation of a federal statute alone is inadequate to support a private cause of action. . ."). Instead, "[t]he central inquiry. . .[is] whether Congress intended to create, either expressly or by implication, a private cause of action." Touche Ross & Co. v.

6

Redington, 442 U.S. 560, 575 (1979). See also American Fed'n of Gov't Employees, Local 2052 v. Reno, 992 F.2d 331, 336 n.7 (D.C. Cir. 1993) ("To determine whether a right of action is implied, the focal point is Congress' intent...") (internal quotation marks and citation omitted).

"[P]rivate rights of action to enforce federal law must be created by Congress. The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative. Without it, a cause of action does not exist and courts may not create one. . ." Alexander v. Sandoval, 532 U.S. 275, 286-87 (2001) (internal citations omitted). See also Assassination Archives and Research Ctr. v. Dep't of Justice, 43 F.3d 1542, 1544 (D.C. Cir. 1995) ("On this issue of statutory construction, the ultimate issue is whether Congress intended to create a private right of action.") (internal quotation marks and citation omitted). The starting point for the analysis in such a case is the "text and structure" of the statute at issue. Sandoval, 532 U.S. at 288; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 285-86 (2002). Nothing in the text or structure of the Solomon Amendment evinces Congressional intent to create such a private right of action.

The starting point for an analysis of whether a statute creates a private right of action is a close reading of the language of the statute. As this court noted in Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group, 219 F. Supp. 2d 20, 33 (D.D.C. 2002) (vacated and remanded to D.C. Cir. on unrelated grounds in Cheney v. United States Dist. Court. for the Dist. of Columbia, 542 U.S. 367 (2004), and remanded by D.C. Cir. in In re Cheney, 406 F.3d 723 (D.C. Cir. May 10, 2005) (en banc)), "courts can not read into statutes a cause of action that has no basis in the statutory text." Id. (citing Sandoval, 532 U.S. at 286-87).

7

In <u>Judicial Watch</u>, this Court, applying <u>Sandoval</u>, held that the Federal Advisory Committee Act ("FACA"), 5 U.S.C. app. 2, does not provide a private right of action because "[n]othing in the language of FACA evidences any intent to create" a private remedy. <u>Judicial Watch</u>, 219 F. Supp. 2d at 33. <u>See</u> <u>also</u> <u>Int'l Brominated Solvents Ass'n v. Am. Conference of Gov't Industrial Hygienists, Inc.</u>, No. 5:04CV394, 2005 U.S. Dist. LEXIS 5802, *36-39 (M.D. Ga. Mar. 11, 2005) (dismissing plaintiff's FACA claims following an examination of the text and structure of FACA and concluding that it does not evince a Congressional intent to provide a private right of action); <u>Assassination Archives and Research Ctr.</u>, 43 F.3d at 1544-45.

Like the FACA, the text of the Solomon Amendment does not create a right enforceable through litigation. The entire focus of the statute is to provide direction to the Secretary of Defense when an institution of higher education fails to provide access to military recruiters. Under the Amendment, the Secretary is to determine if an institution is in compliance, 28 U.S.C. § 1983(b), and to terminate covered funds if an institution is found to be in noncompliance. <u>Id.</u> "Statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons." <u>Sandoval</u>, 532 U.S. at 289 (internal quotation marks and citation omitted). <u>See</u> <u>also</u> <u>Nat'l Treasury Employees' Union v. Campbell</u>, 654 F.2d 784, 790 (D.C. Cir. 1981) (citing with approval <u>Cannon</u>, 441 U.S. 677).

The classic example of rights-creating language is the Voting Rights Act of 1965, 42 U.S.C. § 1973c. It states: "no person shall be denied the right to vote for failure to comply with [a new state enactment covered by, but not approved under, § 5]." 42 U.S.C. § 1973c. <u>See</u> <u>also</u> Title IX, 20 U.S.C. § 1681 (2005). The Supreme Court has found that such statutory language, language that focuses on the individuals benefitted, creates a federal right. <u>See</u> <u>Allen v. State</u>

8

Bd. of Elections, 393 U.S. 544, 556-57 (1969).  See also Cannon, 441 U.S. at 690 (addressing Title IX but also discussing the Voting Rights Act).

The Supreme Court has not, however, countenanced the inference of a private right of action in cases, like this one, in which the statute at issue focuses not on the individual granted the right, but instead on the agency engaged in regulation.  The Supreme Court has "noted that there '[is]...far less reason to infer a private remedy in favor of individual persons' where Congress, rather than drafting the legislation with 'an unmistakable focus on the benefitted class,' instead has framed the statute simply as a general prohibition or a command to a federal agency." Universities Research Ass'n v. Coutu, 450 U.S. 754, 772 (1981) (quoting Cannon, 441 U.S. at 690-692).  In Coutu, 450 U.S. 754, the Supreme Court examined Section 1 of the Davis-Bacon Act which requires that federal construction contracts meeting certain requirements "shall contain" a provision requiring contractors to pay wages "not less than those stated in the advertised specifications."  Id. at 771 (referring to the Davis-Bacon Act, 40 U.S.C. § 276a(a)). The Court recognized that the language in the Act benefits workers working under a federal construction contract but did not find that it reflected a Congressional intent to provide those workers with a private right of action for back wages in connection to those contracts.  Id. at 772. The Court held that because the requirement was "phrased as a directive to federal agencies engaged in the disbursement of public funds, its language provides no support for the implication of a private remedy."  Id. at 772 (internal citation omitted).  See also Stone v. District of Columbia, 572 F. Supp. 976, 979 (D.D.C. 1983) (discussing, with approval, Coutu) (vacated as moot on unrelated grounds in Stone v. District of Columbia, 799 F.2d 773 (D.C. Cir. 1986)).

Like the Davis-Bacon Act, the Solomon Amendment may give students an incidental benefit by ensuring that they will have access to military recruiters.  But like the Davis-Bacon Act, the language of the Solomon Amendment is a directive to the Secretary of Defense and is not focused on the students YAF purports to represent.  Such language does not indicate that Congress intended to create a right enforceable through private litigation.  See Coutu, 450 U.S. at 771.  See also Commonwealth of Puerto Rico v. Rumsfeld, 180 F. Supp. 2d 145, 152-157 (D.D.C. 2001) (applying Sandoval in holding that even though the federal Noise Control Act ("NCA"), 42 U.S.C. § 4901 et seq., creates a duty to state and local governments by requiring federal facilities to comply with state and local noise laws, there is no implied right of action in the NCA by which state and local governments may enforce that requirement in federal court because such a remedy is not found in the text of the NCA, nor in its legislative history) (vacated as moot in Commonwealth of Puerto Rico v. Rumsfeld, No. 02-5018, 2003 U.S. App. LEXIS 11667 (D.C. Cir. June 10, 2003); Salt Institute v. Thompson, 345 F. Supp. 2d 589, 601 (E.D. Va. 2004) (finding no explicit or implicit private right of action in the Information Quality Act ("IQA"), 44 U.S.C. § 3516 note, because the IQA is merely "an instruction" to the Office of Management and Budget "to provide policy and procedural guidance" to agencies and nothing in the text of the IQA provides a right of action to enforce its terms in the federal courts).

Indeed, nothing in the language or structure of the Solomon Amendment suggests that students have an independent private right of action to enforce the statute.  The extensive enforcement authority given to the Secretary of Defense under the Amendment instead demonstrates Congress's intent that this mechanism be the exclusive means of ensuring an

10

institution's compliance.[2]  The legislative history surrounding the Amendment provides no

further reason to believe Congress intended the statute to provide a private right of action.  There

was extensive debate about whether a termination of federal funding was the appropriate remedy

for noncompliance, with advocates arguing that a sanction was necessary to ensure military

readiness, and opponents arguing that such a sanction would interfere with academic freedom

and important research.  See See 140 Cong. Rec. H3860-03 (debate). The legislative history is

silent with respect to vesting students with private causes of action to ensure compliance.

> That the Amendment incidentally benefits students does not vest students with a private

right of action.  It is instructive that the enforcement authority vested in the Secretary of Defense

under the Solomon Amendment operates in a  manner virtually identical to the enforcement

authority afforded to the  Secretary of Education under the Higher Education Act ("HEA").

Pursuant to Title IV of the Higher Education Act, 20 U.S.C. § 1070 et seq., and the regulations

promulgated thereunder, 34 C.F.R. §§ 668 et seq., the Secretary of Education has authority to

enforce the provisions of the Act.  20 U.S.C. §§ 1070(b), 1071, 1082, 1094.  If an institution

---

[2]        Prior to the Supreme Court's decision in Sandoval, when implied rights of action were more commonly accepted, courts employed the four-factor test established in Cort v. Ash, 422 U.S. 66, 78 (1975), to determine whether a federal statute implied a private right of action. The factors set forth in Cort are: (1) is plaintiff a member of the class for whose "especial" benefit the statute was passed; (2) is there any evidence of legislative intent, either explicit or implicit, to create or deny a private remedy; (3) is it consistent with the legislative scheme to imply a private remedy; and (4) is the cause of action one traditionally relegated to state law so that implying a federal right of action would be inappropriate.  As the Supreme Court noted in Touche Ross & Co. v. Redington, 442 U.S. 560, 575 (1979), the "central inquiry" of the Cort analysis is Congressional intent.  "Such expressions of intent are to be found in the language and structure of the statute and in the pertinent legislative history."  City of Gainsville v. Florida Power & Light Co., 488 F. Supp. 1258, 1270 (S.D. Fla. 1980).  Therefore, even under the Cort test, there would still not be a private right of action to enforce the Solomon Amendment because there is no evidence of a Congressional intent to provide such a remedy in either the language of the statute, or in its legislative history.

violates a provision of Title IV, the Secretary has the authority to, among other things, suspend the eligibility of the institution to terminate or limit the eligibility of an institution to participate in Title IV programs, 20 U.S.C § 1094(c)(2)(A), and thus receive student financial assistance. Unlike the Solomon Amendment, the HEA is intended to benefit students.  See e.g., Park School of Business v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).  But even in that circumstance, every court to have considered whether Title IV creates a private right of action has rejected such a notion and found that Congress intended the administrative enforcement mechanism to be the exclusive means of ensuring compliance with the statutes and regulations. Labickas v. Arkansas State University, 78 F.3d 333 (8th Cir. 1996); Park School of Business, 51 F.3d at 1484-85; L'ggrke v. Benkula, 966 F.2d 1346, 1348 (10th Cir. 1992); see also Palm v. Paige, 161 F. Supp. 2d 26, 28 n. 1 (D.D.C. 2001) (same).   Where, as here, the Amendment in intended to benefit the military, and only incidentally benefit students, no arguable private right of action exists under that statute to permit YAF to invoke jurisdiction.[3]

## II.    YAF Lacks Associational Standing

YAF, moreover, lacks associational standing to challenge the Secretary's enforcement of the Solomon Amendment.  Article III, § 2, of the Constitution "extends the 'judicial power' of the United States only to 'Cases' and 'Controversies.'"  Steel Co. v. Citizens for a Better Env't, 523

---

[3]        In apparent recognition of such discretion, plaintiff fails to cite to the Administrative Procedure Act as a basis for jurisdiction.  That is because the APA expressly precludes judicial review of an agency action "committed to agency discretion by law." 5 U.S.C. § 701(a)(2).  "Agency action is committed to the discretion of the agency by law when 'the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" Steenholdt v. FAA, 314 F.3d 633, 638 (D.C. Cir. 2003) (quoting Heckler v. Chaney, 470 U.S. 821, 830 (1984)).  If no "'judicially manageable standard' exists by which to judge the agency's action, judicial review is impossible and the courts are without jurisdiction to review the action." Id.

U.S. 83, 102 (1998).  Article III standing requires that a plaintiff have suffered "an (1) injury in

fact--an invasion of a legally protected interest which is (a) concrete and particularized and (b)

actual or imminent, not conjectural or hypothetical--(2) which is fairly traceable to the

challenged act, and (3) likely to be redressed by a favorable decision."  Nat'l Treasury

Employees' Union v. United States, 101 F.3d 1423, 1427 (D.C. Cir. 1996) (internal quotation

marks and citation omitted).  See also Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61

(1992).  These requirements apply whether an organization asserts standing to sue, either on its

own behalf, or on behalf of its members.  Havens Realty Corp. v. Coleman, 455 U.S. 363, 378-

79 (1982).  The doctrine of standing is "an essential and unchanging part of the case-or-

controversy requirement of Article III,"  Lujan, 504 U.S. at 560, and "the party invoking federal

jurisdiction bears the burden of establishing its existence."  Steel Co., 523 U.S. at 104.  YAF

cannot carry this burden.

### A.    YAF Has Failed to Show That Any of the Students it Purports to Represent Have Suffered and Particularized Injury-in-Fact

YAF must demonstrate as a threshold matter that "its members would otherwise have

standing to sue in their own right[.]"  Hunt v. Washington State Apple Advertising Comm'n,

432 U.S. 333, 343-45 (1977); see also National Wrestling Coaches Ass'n v. Department of

Education, 366 F.3d 930, 937 (D.C. Cir. 2004) (same).  YAF has failed to do so.  YAF generally

alleges that it "has constituents who currently attend [UCSC] and who desire to interview with

military recruiters at job fairs conducted by the UCSC on its campus[.]"  Complaint, ¶ 4.  YAF,

however, must identify actual members who have suffered an injury "of that sort that would

make out a justiciable case had the members themselves brought suit."  Warth v. Seldin, 422

U.S. 490,  511 (1975); see also Arizonans for Official English v. Arizona, 520 U.S. 43, 65-66

(1997) ("association has standing to sue" on behalf of its members "only if its members would have standing to sue in their own right" on the basis of "concrete injury").   Nowhere in the Complaint does YAF identify any "constituent" and show how that individual has suffered the concrete, particularized injury required for each to have standing in their own right.

The Court should thus dismiss the action.  In <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. City of Albany</u>, 250 F. Supp. 2d  48 (N.D.N.Y. 2003), for example, the court held that an associational plaintiff was required to identify the member it purported to represent and make a showing that the member would have standing to sue in his or her own right.  In that case, a neighborhood association brought suit against a city and its officials alleging various violations of federal regulations governing lead-based paint activities.  <u>Id</u>. at 52.  The association claimed to represent members residing in an area subject to federal law and regulations designed to protect public health from the serious risks associated with lead-based paint activities.  <u>Id</u>. at 54.  It alleged that certain members had been injured as a result of lead-based paint work performed on their homes.  <u>Id</u>.  Like here, however, the association declined to name any of its members in the complaint and failed to allege that any specific member had lead-based paint work performed on his or her home.  <u>Id.</u>  Rather, like here, the complaint contained general allegations, stating that plaintiff's members resided in the Lead Paint Abatement Program's target area and were injured by defendants' failure to comply with federal laws pertaining to lead paint.  <u>Id</u>.

In granting a motion to dismiss, the court explained that plaintiff's failure to identify members prevented the court from determining individual standing.  <u>Id</u>. at 56.  While the court acknowledged that plaintiff sufficiently alleged concrete and particularized injuries, it found the

general allegations which related to no specific member insufficient to establish an injury-in-fact.  Id.  Ultimately, the court concluded that by failing to identify its members, plaintiff did not meet its burden of demonstrating injury-in-fact on the pleadings.  Id. at 57.

In National Alliance for the Mentally Ill v. Board of County Comm'rs, 376 F.3d 1292 (11th Cir. 2004), the court similarly held that the failure to identify an injured member prevented the organization from asserting associational standing.  In that case, two mentally ill residents of St. John's mental health facility along with National Alliance for the Mentally Ill, St. John's Inc. ("NAMI-St. Johns"), and the National Alliance for the Mentally Ill, Florida, Inc.-Jacksonville ("NMAI-Jax") sued the Board of County Commissioners for its decision not to fund a mental health treatment facility.  Id. at 1294.  Plaintiffs alleged, inter alia, violations of the Fair Housing Act, the Americans with Disabilities Act, and violation of their Fourteenth Amendment rights.

The organizations claimed associational standing to bring suit on behalf of their members.  Id at 1296.  However, the court found that both organizations failed to demonstrate that any of their members had standing to sue.  Id.  The court determined that neither of the individuals named in the action had been injured and, therefore, lacked standing to bring suit in their own right.  The court explained that the organizations were provided with information pertaining to persons who were eligible for treatment when it tendered discovery materials and could have used those materials to ascertain the identities of injured constituents but chose not to do so.  Id. The court affirmed the district court's decision to dismiss for lack of associational standing, finding that the organizations' "failure to identify an injured constituent prevented them from asserting associational standing."  Id., citing Arizonans for Official English, 520 U.S. at 66. By failing to identify any student with standing to sue in their own right, YAF similarly

15

lacks standing.

**B.    YAF Has Also Failed to Show Causation and Redressability**

The injury alleged, moreover, to the extent it occurred, is alleged to have been caused by student and faculty demonstrations at UCSC.  Complaint, ¶¶ 4, 8-22.  Because such students and faculty are not before the Court, any order directing the Secretary to terminate federal funding to UCSC is unlikely to have any effect on the conduct of students and faculty members and thus provide redress to any affected students.

"To satisfy the requirements of Article III standing in a case challenging government action, a party must allege an injury in fact that is fairly traceable to the challenged government action, and 'it must be 'likely, as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision.'" National Wrestling Coaches Ass'n v. Department of Education, 366 F.3d 930, 937 (D.C. Cir. 2004) (citing Lujan, 504 U.S. at 560-61) (other citations omitted).  When a claim "hinges on the government to prevent another party's injurious behavior, the 'fairly traceable' and redressability inquiries appear to merge." The Freedom Republicans, Inc. v. FEC, 13 F.3d 412, 418 (D.C. Cir. 1994) (citing Competitive Enterprise, Inc. V. NHTSA, 901 F.2d 107, 113 (D.C. Cir. 1990)).  "In such cases, both prongs of standing analysis can be said to focus on principles of causation; fair traceability turns on the causal nexus between the agency action and the asserted injury, while redressability centers on the causal connection between the asserted injury and judicial relief." Id. (citing Allen v. Wright, 468 U.S. 737, 753 n. 19 (1984)).

YAF fails to show that even if the Court were to grant the ultimate relief requested – termination of federal funding – student and faculty protests of the military's employment

practices would cease.  YAF generally alleges that the Secretary's "failure" to enforce the statute "has injured Plaintiff and its constituents because it has deprived Plaintiff's constituents of access to military recruiters on the UCSC campus."  Complaint, ¶ 27.  "[A]lthough less is required to survive a motion to dismiss than a motion for summary judgment, . . . a bald allegation of standing is not enough to survive even a motion to dismiss where neither the factual allegations nor their logic establish redressability." Renal Physicians Ass'n v. HHS, 489 F.3d 1267, 1278 (D.C. Cir. 2007) (citing National Wrestling Coaches Ass'n, 366 F.3d at 938, 941-43).  Mere "'unadorned speculation' as to the existence of a relationship between the challenged government action and the third-party conduct 'will not suffice to invoke the federal judicial power.'"  National Wrestling Coaches Ass'n, 366 F.3d at 938 (quoting Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 44 (1976)). When "causation and redressablity hinge on the response of others, . . . it becomes the burden of the plaintiff to adduce facts showing that . . . choices [of the independent actors] have been or will be made in such manner as to produce causation and permit the redressability of the injury."  Renal Physicians Ass'n, 489 F.3d at 1273 (quoting Lujan, 504 U.S. at 562).

YAF cannot satisfy this threshold showing.  Even assuming that a violation of the statute is present, termination of federal funding may not alter the conduct of UCSC students and faculty. The D.C. Circuit's decision in The Freedom Republicans is instructive in this regard. There, the D.C. Circuit held that an independent, multiracial organization of Republicans, lacked standing to challenge the Federal Election Commission's ("FEC's") funding of the Republican National Convention on the grounds that the Republican Party's delegate-selection processes discriminated against minority groups. The court found that, although the level of FEC funding

17

was substantial, the alleged injury was not fairly traceable to any encouragement by the

Government and the court could not "begin to predict" the impact of withdrawal of federal

funding on the Party's decisions as to delegate selection.  13 F.3d at 418-19.

The same is true here.  If anything the threat of terminating federal funding plays an even

lesser role in controlling the conduct of UCSC students and faculty who wish to protest the

military's employment practices.  History has shown that the threat of the loss of federal funding

has little if any effect on the students and faculty who wish to protest such practices.  In

Rumsfeld v. Forum For Academic And Inst. Rights, 547 U.S. 47 (2006), for example, professors

openly challenged those practices despite the fact that federal funding could be terminated to

their institutions.  The same was true in Burt v. Gates, No. 05-1732, 2007 U.S. App. LEXIS

22130 (2d Cir. Sept. 17, 2007), involving faculty at Yale Law School who banded together to

prohibit military recruiters from attending job fairs despite the threat that federal funding to that

institution could be terminated.

The D.C. Circuit has recognized only two categories of cases in which standing exists to

challenge government action where the direct cause of injury is the action of a third party.

Neither applies here.  The first is "where the challenged government action authorized conduct

that would otherwise have been illegal." Renal Physicians Ass'n, 489 F.3d at 1275.  The

government is not authorizing illegal conduct.  See Forum For Academic And Inst. Rights,

547 U.S. at 69 ("Students and faculty are free to associate to voice their disapproval of the

military's message").

The second situation is found "'where the record presented substantial evidence of a

causal relationship between government policy and the third-party conduct, leaving little doubt s

18

to causation and the likelihood of redress.'" <u>Renal Physicians Ass'n</u>, 489 F.3d at 1275 (quoting

<u>National Wrestling Coaches Ass'n</u>, 366 F.3d at 941)).  As explained, a student's or faculty's

decision might depend upon factors having nothing to do with whether UCSC continues to

receive federal funding, not the least of which would be his or her desire to protest based upon

his or her beliefs.  No basis exists to confer standing upon YAF and to confer this Court with

jurisdiction

## III.    <u>Mandamus Is An Inappropriate Remedy</u>

Lastly, and at a minimum, no basis exists for the Court to enter a mandamus order against

the Secretary compelling the termination of UCSC's federal funding.  To obtain mandamus

relief, YAF must show that (1) it has a clear right to relief; (2) the Secretary has a clear duty to

act; and (3) there is no other adequate remedy available to the plaintiff.  <u>Swan v. Clinton</u>, 100

F.3d 973, 977 n.1 (D.C. Cir. 1996) (citing and quoting <u>American Cetacean Soc'y v. Baldridge</u>,

768 F.2d 426, 433 (D.C. Cir. 1985).  YAF bears a heavy burden of showing that its right to a

writ of mandamus is "clear and indisputable."  <u>In re Cheney</u>, 406 F.3d 723, 729 (D.C. Cir. 2005).

In the absence of a clear and certain duty to act, there can be no mandamus relief.  <u>N. State</u>

<u>Power Co. v. U.S. Dep't of Energy</u>, 128 F.3d 754, 758 (D.C. Cir. 1997).  Mandamus is only

available where "the duty to be performed is ministerial and the obligation to act peremptory and

clearly defined." <u>13th Reg'l Corp. v. United States Dep't of Energy</u>, 654 F.2d 758, 760 (D.C.

Cir. 1980).  A ministerial duty is one that admits of no discretion, so that the official has no

authority to determine whether to perform the duty.  <u>Swan</u>, 100 F.3d at 977 (citing <u>Mississippi v.</u>

<u>Johnson</u>, 71 U.S. 475, 498 (1866).  Courts do not have authority under the mandamus statute to

order a government to perform a discretionary duty.  <u>Id.</u>

Because the Secretary's enforcement decisions under the Solomon Amendment involve questions of statutory discretion that are not properly subject to judicial review, mandamus is inappropriate.  Based largely upon separation of powers concepts, the Supreme Court has recognized "over many years that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion," Heckler v. Chaney, 470 U.S. 821, 831 (1985) (citing United States v. Batchelor, 442 U.S. 114, 123-24 (1979)).  The recognition of an agency's absolute and unreviewable discretion when making decisions to prosecute or enforce "is attributable in no small part to the general unsuitability for judicial review of . . . decisions to refuse enforcement."  470 U.S. at 831.  The presumption that prosecutorial discretion is not subject to judicial review can be rebutted only if Congress "has indicated an intent to circumscribe agency enforcement discretion, and has provided meaningful standards for defining the limits of that discretion."  Id. at 834-35.

No such intent is expressed here.  Nothing in the text or legislative history of the Solomon Amendment circumscribes the Secretary's enforcement discretion, or otherwise provides meaningful standards for defining the limits of that discretion.  This case resembles West v. Spellings, 480 F. Supp. 2d 213 (D.D.C. 2007), in which plaintiff sued the Secretary of Education, requesting, among other things, the entry of a mandamus order compelling her to use her enforcement authority under the Rehabilitation Act of 1973, 29 U.S.C. § 794, in a manner favorable to plaintiff.  Finding the Department of Education's enforcement decision a matter of discretion, the court denied mandamus.  Id. at 218.  The same result should be reached here.

20

## CONCLUSION

YAF's action thus should be dismissed for lack of jurisdiction, both because no waiver of sovereign immunity exists to permit jurisdiction and because YAF lacks associational standing to sue on behalf of unidentified students at UCSC.  In the alternative, YAF's request for mandamus can also be rejected on the merits on the ground that such relief is inappropriate where the Solomon Amendment vests the Secretary with statutory discretion regarding enforcement.

Dated: October 9, 2007                     Respectfully submitted,

                                           PETER D. KEISLER
                                           Assistant Attorney General

                                           CARL J. NICHOLS
                                           Deputy Assistant Attorney General

                                           JEFFREY A. TAYLOR
                                           United States Attorney


                                           VINCENT M. GARVEY
                                           Deputy Branch Director

                                           /s/ Paul G. Freeborne
                                           PAUL G. FREEBORNE
                                           Department of Justice
                                           Civil Division, Federal Programs Branch
                                           20 Massachusetts Ave., NW,
                                           Washington, D.C. 20530
                                           Tel: (202) 353-0543
                                           Fax: (202) 616-8460

                                           *Counsel for the Federal Defendant*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
Young America's Foundation,             )
                                        )
                          Plaintiff,    )
                                        )
              v.                        )        Case No. 1:07-CV-01351
                                        )
Robert M. Gates, Secretary,             )
United States Department of             )
Defense                                 )
                                        )
                          Defendants.   )
_____)

## <u>ORDER</u>

Upon consideration of defendant's motion to dismiss, and the entire record herein, it is

hereby

ORDERED that defendant's motion to dismiss is GRANTED; and it is

FURTHER ORDERED, that this action is dismissed.


Dated: _____, 2007            _____
                                     John D. Bates
                                     United States District Judge