# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| Young America's Foundation, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | Case No. 1:07-cv-01351-JDB |
| v. | ) | |
| | ) | |
| Robert M. Gates, Secretary, United States | ) | |
| Department of Defense, | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO
## DEFENDANT'S MOTION TO DISMISS

WILLIAM PERRY PENDLEY, Bar No. 378906
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, Colorado 80227
Tel.: (303) 292-2021
Fax: (303) 292-1980

*Counsel for Plaintiff*

Dated: December 7, 2007

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT .......................................................................................................................2

I.    Standard of Review ...................................................................................................2

II.   Plaintiff Has A Right of Review Under the APA ...........................................................3

      A.    The APA Presumes Reviewability Of Agency Action .....................................3

      B.    Plaintiff Has A Right Of Review Under The APA ...........................................4

III.  This Court May Act Here Under The APA And Mandamus Statute ...........................10

IV.   YAF Has Standing To Seek Mandamus and APA Relief ............................................12

      A.    YAF Has Suffered A Cognizable Injury.........................................................13

      B.    YAF's Injury Meets the Causation And Redressability Tests .........................14

CONCLUSION...................................................................................................................16

## <u>INTRODUCTION</u>

The Solomon Amendment mandates that the Department of Defense ("DOD") deny federal funds to any college or university that fails to provide military recruiters the same access to their students as that college or university provides to other prospective employers. 10 U.S.C. § 983. For three years, the University of California at Santa Cruz ("UCSC") has allowed protests, in fact, near riots, by professors and students, to drive military recruiters from its job fairs while other non-military recruiters enjoyed an unimpeded opportunity to advise students of their employment opportunities.

Defendant is well aware of what has occurred at UCSC. The national media has reported frequently on the protests staged by UCSC faculty and students. Moreover, undersigned counsel wrote to then-Secretary of Defense, Donald Rumsfeld, advising him of the failure of UCSC to provide the access required by the Solomon Amendment in April 2006. Nevertheless, Defendant refuses to enforce the Solomon Amendment against UCSC. This lawsuit, in the form of a mandamus action and, as amended, an action pursuant to the Administrative Procedure Act, seeks to compel Defendant to obey the law and take the action contemplated and directed by Congress.

Defendant argues that YAF's Complaint should be dismissed on jurisdictional grounds because: (1) YAF has identified no waiver of sovereign immunity that permits it to sue the federal Defendant in this case; and (2) the Solomon Amendment does not create a private right of action. Def. Mot. Dismiss, 5-12. Defendant also argues that YAF's Complaint should be dismissed on the merits because (1) YAF lacks associational standing; and (2) mandamus is an inappropriate remedy. *Id* at 12-20.

This Court will find that Plaintiff's Amended Complaint wholly eliminates any of the purported jurisdictional deficiencies identified by Defendant. Plaintiff's Amended Complaint includes a claim under the Administrative Procedure Act, 5 U.S.C. § 500, *et seq*, ("APA"). The APA provides a private cause of action and waives sovereign immunity for cases that fit within its statutory criteria. 5 U.S.C. § 702. As the following discussion will show, this case fits squarely within the APA's parameters and therefore bears none of the purported jurisdictional deficiencies cited by Defendant.

Similarly, the Amended Complaint also eliminates any purported factual infirmities that, according to Defendant, made the Complaint susceptible to dismissal. The Amended Complaint specifically alleges injuries to members of YAF. Am. Compl. ¶ 5, 6, 13, 14, 17, 18, 21, 22, 29, 30. These allegations establish Plaintiff's Article III standing and confirm that mandamus is a just and suitable remedy for this case.

## ARGUMENT

### I.    STANDARD OF REVIEW.

On a motion to dismiss for failure to state a claim, the court assumes the truth of the material facts alleged in the complaint. *Summit Health, Ltd. v. Pinhas,* 500 U.S. 322, 325 (1991). A complaint is "construed liberally" in favor of the plaintiff and "should not be dismissed unless plaintiff[] can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Kowal v. MCI Commc'n Corp.,* 16 F.3d 1271, 1276 (D.C. Cir. 1994). *See also Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *Browning v. Clinton,* 292 F.3d 235, 242 (D.C. Cir.2002).

## II.    PLAINTIFF HAS A RIGHT OF REVIEW UNDER THE APA.

### A.  The APA Presumes Reviewability Of Agency Action.

Section 702 of the APA provides for judicial review of a particular agency action when an individual suffers a legal wrong because of an agency's act or failure to act.  5 U.S.C. § 702. To effectuate this right, the APA waives sovereign immunity for cases fitting the following statutory criteria:

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: *Provided*, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance.

*Id.* (emphasis in original).

The APA has a default presumption of reviewability.  *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140 (1967).  This is because an "essential function of the reviewing court is to guard against bureaucratic excesses by ensuring that administrative agencies remain within the bounds of their delegated authority."  *Planned Parenthood Federation of America, Inc. v. Heckler*, 712 F.2d 650, 655 (D.C. Cir. 1983).  *See also Abbot Laboratories*, 387 U.S. at 140-41. In fact, only two exceptions exist under the APA to prevent judicial review.  Section 701(a)(1) bars judicial review when review is explicitly precluded by statute; and section 701(a)(2) provides that agency action is unreviewable when it is "committed to agency discretion by law."

Section 701(a)(2) is a "rare exception."  *Alliance to Save Mattaponi v. U.S. Army Corps of Engineers*, 2007 WL 1576317 *4 (D.D.C. 2007).  It bars review only when "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's

exercise of discretion," *Heckler v. Chaney*, 470 U.S. 830, 831 (1985), or when "the statute is drawn in such broad terms that in a given case there is no law to apply." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971).

In fact, the D.C. Circuit has narrowly interpreted the meaningful standard requirement explained in *Chaney* in cases involving agency inaction. *Alliance to Save Mattaponi*, 2007 WL 1576317 at *5. *See also Sierra Club v. Thomas,* 828 F.2d 783 (D.C. Cir. 1987); *Her Majesty the Queen in Right of Ontario v. U.S. Environmental Protection Agency*, 912 F.2d 1525 (D.C. Cir. 1990). Specifically, the D.C. Circuit has held that, "[when] agency inaction is final action having the same impact as agency action," it is reviewable. *Sierra Club*, 828 F.2d at 793-94.

**B. Plaintiff Has A Right Of Review Under The APA.**

YAF, pursuant to its Amended Complaint, brings the instant action under the APA for Defendant's failure to act. YAF has established that it has a cause of action and that its case is not barred by sovereign immunity because the Amended Complaint sets forth each required element under 5 U.S.C. § 702.

Specifically, this action is for mandamus. Am. Compl. ¶ 1. YAF has specified Robert M. Gates, the Secretary of the Department of Defense, as the individual responsible for compliance and YAF has indicated that Defendant Gates is personally responsible for compliance. Am. Compl. ¶ 7. YAF's has established therefore that it may proceed under the APA and according to the APA's waiver of sovereign immunity at section 702. YAF's Amended Complaint "shall not be dismissed nor relief therein be denied on the ground that it is against the United States. . . ." 5 U.S.C. § 702. *See also Jaffee v. United States*, 592 F.2d 712, 718-19 (3d. Cir.), *cert. denied*, 441 U.S. 961, 9 (1979) (section 702 waives sovereign immunity for actions against federal government agencies, seeking nonmonetary relief).

Moreover, YAF's Amended Complaint does not fall within one of the two exceptions to the general rule permitting judicial review. *See* 5 U.S.C. § 701(a)(1), (2). Section 701(a)(1) bars judicial review when explicitly precluded by statute; it is not applicable here because the Solomon Amendment is silent on the availability of judicial review—it neither promotes nor prohibits judicial review. *See* 10 U.S.C. § 983.

Section 701(a)(2), which prohibits judicial review of an agency action committed to its discretion by law, 5 U.S.C. § 701(a)(2), is a rare exception. *Citizens to Preserve Overton Park, Inc.*, 401 U.S. at 410. It arises only when "the statute is drawn in such broad terms that in a given case there is no law to apply." *Id.* Most times however, so long as "judicially manageable standards" exist for a court to determine "how and when an agency should exercise its discretion," section 701(a)(2) does not prevent judicial review. *Chaney*, 470 U.S. at 830. These standards "may be found in formal and informal policy statements and regulations as well as in statutes." *Padula v. Webster,* 822 F.2d 97, 100 (D.C. Cir. 1987). In fact, the D.C. Circuit has explained that even minimal guidance, that assists the court in determining whether agency action is unlawful, is sufficient overcome the restriction of section 701(a)(2). *Alliance to Save Mattaponi,* 2007 WL 1576317 at *5.

Here, Congress has created a roadmap to guide judicial interpretation of the Solomon Amendment. The statute's text, the regulations promulgated thereunder, and the Supreme Court's interpretation of the statute represent "substantive legal criteria against which an agency's conduct can be seriously evaluated." *Drake v. F.A.A.,* 291 F.3d 59, 70 (D.C. Cir. 2002).

5

First, the statute's text gives significant guidance to this Court:

> *No funds. . . may be provided* by contract or by grant to an institution of higher education. . . if the Secretary of Defense determines that that institution. . . has a policy or practice (regardless of when implemented) that either prohibits, or in effect prevents--
>
> (1) the Secretary of a military department or Secretary of Homeland Security from gaining access to campuses, or access to students. . . on campuses, for purposes of military recruiting in a manner that is *at least equal in quality and scope* to the access to campuses and to students that is provided to any other employer
>
> * * * *

10 U.S.C. § 983 (emphasis added).

The statute establishes a clear goal—to prohibit universities that bar military recruiters from campus from receiving federal funds—and sets forth a roadmap showing how to achieve this objective. *Id.* It indicates who is responsible for enforcement and sets a bare minimum requirement ("at least equal in quality and scope") to inform universities' compliance. *Id.* In fact, the U.S. Supreme Court has interpreted the Solomon Amendment's "at least equal in quality and scope" language. *See Rumsfeld v. Forum for Academic and Inst. Rights,* 547 U.S. 47 (2006). According to the Supreme Court, the Solomon Amendment requires that military recruiters have the same access to campus and students as the "nonmilitary recruiter receiving the most favorable access." *Id.* at 56. In practice, this means that

> [a]pplying the same policy to all recruiters is therefore insufficient to comply with the statute if it results in a greater level of access for other recruiters than for the military. Law schools must ensure that their recruiting policy operates in such a way that military recruiters are given access to students at least equal to that *provided* to any other employer.

*Id.* (internal quotations omitted) (emphasis in original).

The regulations promulgated under the Solomon Amendment provide additional guidance to assist review. *See* 32 C.F.R. § 216.1 *et seq.* Specifically, the "Policy" section of the regulations indicate when the Department of Defense must commence investigation::

> (f) An evaluation to determine whether a covered school maintains a policy or practice covered by paragraph (d) of this section *shall* be undertaken when:
>
> (1) Military recruiting personnel cannot gain entry to campus, [or] cannot obtain access to students on campus. . .

> * * * *

32. C.F.R. 216.4 (emphasis added). Congress's use of the phrase "no funds" also indicates that the investigation is not discretionary, but, in fact, mandatory. *Id.*

The "Responsibilities" section of the regulations also provides interpretive guidance. *See* 32 C.F.R. § 216.5. Section (b) requires the DOD to identify violators and provides:

> (b) Secretaries of the Military Departments *shall*:
>
> (1) Identify covered schools that, by policy or practice, deny military recruiting personnel entry to the campus(es) of those schools, [or] access to their students. . .

> * * * *

*Id.* (emphasis added). This section also explains the enforcement procedures of the Solomon Amendment:

> (A) The Assistant Secretary of Defense for Force Management Policy *shall*:
>
> (1) Not later than 45 days after receipt of the information described in paragraph (b)(3) of this section [pertaining to whether a school has a policy of practice of denying military recruiters]:
>
> (i) Make a final determination under [the Solomon Amendment], and notify any affected school of that determination along with the basis, and that it is therefore ineligible to receive prescribed funds. . . .

*Id.* (emphasis added). These regulations, taken together with the text of the statute and the guidance of the U.S. Supreme Court represent much more than the "minimal guidance" required

for judicial review. *Alliance to Save Mattaponi*, 2007 WL 1576317 at \*5. They are clearly

discernible standards that enable meaningful review of this action. *Drake,* 291 F.3d at 70.

Defendant also claims that this case is not appropriate for judicial review because

Defendant has "absolute and unreviewable discretion when making decisions to prosecute or

enforce." Def. Mot. Dismiss, 20. However, as the D.C. Circuit explained in *Sierra Club*,

"jurisdiction. . . is not limited to situations in which 'final action,' as it is commonly understood,

has indeed been taken. . . . [W]e also have jurisdiction to review agency inaction. . . ." *Id.* at 793.

Specifically, when agency inaction is final action that the agency has not acknowledged, it is

reviewable. *Id.* "When administrative inaction has the same impact on the rights of the parties

as an express denial of relief, judicial review is not precluded." *Her Majesty the Queen in Right*

*of Ontario v. U.S. E.P.A.*, 912 F.2d 1525, 1531 (1990) *citing Sierra Club*, 828 F.2d at 793. The

D.C. Circuit explained that such action is reviewable because "an agency cannot preclude

judicial review by casting its decision in the form of inaction rather than in the form of an order

denying relief." *Sierra Club*, 828 F.2d at 793.

Here, Defendant's failure to act has affected YAF no differently than if Defendant had

found that USCS is *not* in violation of the Solomon Amendment. That is, if Defendant had

deemed USCS in compliance with the Solomon Amendment, in spite of the student and faculty

protests that prevented military recruiters and students from meeting on campus, YAF would be

no better off than it is now. YAF would seek to meet with military recruiters on campus and still

be unable to do so.

To the degree Defendant's argument regarding his "absolute and unreviewable

discretion" claims a right not to enforce the Solomon Amendment, that argument must fail

because Congress has decided otherwise. Congress explicitly noted that "*no funds*" may be

provided to schools that violate the Solomon Amendment.  10 U.S.C. § 983 (emphasis added).

Therefore, Defendant may not decline to withhold federal funds from UCSC for its violation of

the Solomon Amendment.  Moreover, Defendant's claim that a termination of federal funding

will not alter the conduct of UCSC students and faculty and thereby ensure the presence of

military recruiters on campus is, quite simply, not Defendant's argument to make.  *Congress* has

decided already that a termination of federal funding is the proper remedy for a violation of the

Solomon Amendment.

Ironically, in this final regard, Defendant's position is the same as that taken by UCSC.[1]

Defendant claims that the U.S. military's inability to access students for recruiting purposes is

not the university's fault; rather, it is due to the errant behavior of students and faculty—events

supposedly beyond the university's control.  Meanwhile UCSC's federal funding continues

without interruption.  This position by Defendant, for all intents and purposes, is the same as a

finding by Defendant that UCSC is in compliance with the Solomon Amendment.

If protests and riots had prevented UCSC from complying with a federal law with which

it agreed, it is all but certain that UCSC would take affirmative action in response to such

protests and riots to ensure its ability to comply with the law.  Instead, as to the Solomon

Amendment, UCSC says that such matters are beyond its control.  Astonishingly, Defendant

---

[1] Tim Stephens, a UC-Santa Cruz public relations officer stated, in an article written on August 6, 2007, that the "administration has consistently strived to uphold protection for everyone's First Amendment rights, including the right of students to discuss job prospects with all prospective employers at a career fair and the right of individuals or groups to hold a legal and nonviolent protest."  He explained further that "[t]he campus has consistently complied with all requirements of the Solomon Amendment," and "standard campus judicial process was followed to investigate whether students violated the campus code of conduct and to take appropriate disciplinary action." With regard to faculty protest, he said "the campus is not aware of any allegations of violations of the faculty code of conduct."  Matt Purple, *Harassment of Military Recruiters Sparks Lawsuit at College*, CNSNews.com, August 6, 2007, *available at* http://www.cnsnews.com/.

concurs.  Thus, military recruiters been driven from UCSC campus for three years running, and

Defendant, by refusing to act as Congress directed, has excused, enabled, and endorsed UCSC's

feckless policy.  Defendant's position has not only robbed YAF's members of their ability to

meet with recruiters at UCSC, but also has taught other universities that, so long as they stand by

"helplessly" as their faculties and students drive recruiters from campus, they have not violated

the Solomon Amendment.

### III.   THIS COURT MAY ACT HERE UNDER THE APA AND MANDAMUS STATUTE.

APA section 706 empowers a reviewing court to "decide all relevant questions of law,

interpret constitutional and statutory provisions, and determine the meaning or applicability of

the terms of an agency action."  5. U.S.C. § 706.  It also permits the reviewing court to "(1)

compel agency action unlawfully withheld or unreasonably delayed."  *Id*.

The Supreme Court, in *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 63

(2004), held that the language of 706(1) mandates that only action that is "legally required" can

be compelled under the APA.  Similarly, a plaintiff is entitled to mandamus relief when "(1) the

plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no

other adequate remedy available to the plaintiff."  *Power v. Barnhart,* 292 F.3d 781, 784 (D.C.

Cir. 2002) *quoting N. States Power Co. v. Dep't. of Energy,* 128 F.3d 754, 758 (D.C. Cir. 1997).

"[P]laintiff's legal grounds supporting government's duty to him must be clear and compelling."

*In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005).  *See also Ganem v. Heckler,* 746 F.2d 844,

853 (D.C. Cir.1984).  Hence, the analysis under APA section 701(1) and an action for mandamus

are one in the same.  *Norton,* 542 U.S. at 63.

Defendant argues that "the Secretary's enforcement decisions under the Solomon

Amendment involve questions of statutory discretion that are not properly subject to judicial

review." Def. Mot. Dismiss, 20. However, as discussed *supra*, Defendant's failure to act to enforce the Solomon Amendment is properly before this Court because Congress has established "meaningful standards" to guide judicial review. Moreover, a straightforward reading of the Solomon Amendment shows that a "clear and indisputable" directive exists that Defendant must, quite simply, execute. *Power,* 292 F.3d at 784.

The Solomon Amendment unambiguously states that "*no funds*" may be provided to a school that has a "policy or practice. . . that either prohibits, or in effect prevents" military recruiters from accessing the campus and/or its students. 10 U.S.C § 983 (emphasis added). Here, taking Plaintiff's allegations as true, UCSC has, at the very least, an ongoing practice that, in effect, prevents military recruiters from meeting with students. *See* Am. Compl. ¶ 10-30. According to the Supreme Court, UCSC must do more than just stand aside; it must provide the same access to campus and students as the "nonmilitary recruiter receiving the most favorable access." *Rumsfeld,* 547 U.S. at 56. In contrast, UCSC's policy and practice consists of sidestepping the Solomon Amendment. Confronted with violent protests and near riots that drive military recruiters from the campus, UCSC's policy has been to do nothing. This has, in turn, prevented military recruiters from accessing students on the campus. UCSC and now Defendant, assert that these protests are beyond UCSC's control and the university should therefore be held harmless when it comes to enforcement of the Solomon Amendment. This is not what Congress intended. Congress intended that, in circumstances such as these, federal funds would be withheld. Thus, Defendant is under a duty to withdraw federal funding from UCSC pursuant to the Solomon Amendment.

At a minimum, Defendant is under a duty to investigate. The regulations provide that "an evaluation. . . *shall* be undertaken when [military recruiters] cannot gain entry to campus [or]

cannot obtain access to students on campus". 32 C.F.R. § 216.4 (emphasis added). Here, Plaintiff has identified several instances where military recruiters were unable to obtain access to campus, and students on campus. Am. Compl. ¶ 10, 15, 19. Section 216.4 makes no mention of a "policy or practice" on the part of UCSC. Rather, it is a clear directive that requires that, if recruiters cannot access students on campus, an investigation must be commenced. Here, military recruiters have not been able to access students; therefore, an investigation must commence.

Under both the APA and the Mandamus Statute, this Court may, and in this instance must, order Defendant, at the very least, to initiate, complete, and report to this Court regarding implementation of the very regulation that Defendant has imposed upon himself pursuant to the directive of Congress in its adoption of the Solomon Amendment.

## IV.  YAF HAS STANDING TO SEEK MANDAMUS AND APA RELIEF.

Article III standing requires that a plaintiff identify a case or controversy existing between himself and the defendant. *Warth v. Seindlin*, 422 U.S. 490, 498 (1975). He must assert a "personal stake in the outcome" of the case, *Baker v. Carr*, 369 U.S. 186, 204 (1962), and allege, at minimum, the following threshold elements of standing. First, plaintiff must allege that he has "suffered an injury in fact. . . [that is] actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 403 U.S. 555, 560-61 (1992). Second, plaintiff's injury must be "fairly traceable to the challenged action of the defendant. *Id.* Finally, it must be "likely as opposed to merely speculative, that [his] injury will be 'redressed by a favorable decision." *Id* (internal quotations and citations omitted). When an association files suit, the associational plaintiff must allege that "at least one of its members has standing to sue in his own right, the interests the association seeks to protect are germane to its purpose, and individual members

12

need not participate in the lawsuit themselves." *Sierra Club v. EPA,* 292 F.3d 895, 898 (D.C. Cir. 2002) *citing Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 342-43 (1977).

### A. YAF Has Suffered A Cognizable Injury.

YAF herewith submits an declaration that demonstrates "(a) its members would otherwise have standing to sue in their own right. . . ." *Natural Resources Defense Council v. E.P.A.*, 489 F.3d 1364 (D.C. Cir. 2007), *citing Hunt,* 432 U.S. at 343. YAF's declaration demonstrates that at least one member of YAF would have standing under Article III to sue in his or her own right. *See* Youngblood Decl. attached hereto.

YAF was founded in 1969 by a group of college students at Vanderbilt University. *Id.* ¶ 5. YAF's "is committed to ensuring that increasing numbers of young Americans understand and are inspired by the ideas of individual freedom, a strong national defense, free enterprise, and traditional values." *Id.* YAF has 13 students who are currently enrolled at UCSC. *Id.* ¶ 6. Approximately six of YAF's students at UCSC have considered or are considering a career with the military. *Id.* ¶ 7. At least one of these members, who sought to meet with military recruiters, has attended a UCSC job fair since April 2005 at which military recruiters were not present. *Id.* ¶ 8-22. YAF therefore has individual members who have been injured by Defendant's failure to enforce the Solomon Amendment.

YAF's interest in this lawsuit is also germane to its purpose. *Hunt,* 432 U.S. at 342-43. As a part of its commitment to ensuring that young Americans understand and are inspired by the importance of a strong national defense, YAF has worked to defend the rights of high school, college, and graduate students to hear from military recruiters on their campuses. Youngblood Decl. ¶ 2, 5. This lawsuit therefore, which ultimately seeks to restore military recruiting to UCSC campus, is germane to YAF's mission.

Finally, this lawsuit may proceed absent the participation of individual members of YAF. *Hunt,* 432 U.S. at 342-43. YAF has sufficiently alleged that, as an entity, it has suffered an injury that will be redressible by this court without the participation of individual YAF members. There are no factual disputes that necessitate the presence of YAF members in this litigation; in fact, it is well known that military recruiters have been unable to access the UCSC campus and its student, some of whom are YAF members, for three years.

### B. YAF's Injury Meets the Causation And Redressability Tests.

Defendant argues that Plaintiff's injuries are not caused, and are not redressible, by Defendant, because Defendant's actions are unlikely to have any effect on the conduct of student and faculty at UCSC who are not before this Court. Def. Mot. Dismiss, 16. However, Defendant's argument is supported by neither the law nor the actual behavior of universities with regard to the Solomon Amendment.

Put simply, the threat of enforcement alters behavior. Faced with a loss of federal funding, identical to that which UCSC would face if it were deemed in violation of the Solomon Amendment, Yale University Law School chose to reestablish on-campus military recruiting. On September 17, 2007, the Second Circuit Court of Appeals held that the Solomon Amendment did not infringe on the constitutional rights of Yale Law School faculty members, *See Burt v. Gates*, 502 F.3d 183 (2d. Cir. 2007), and after this decision, Yale Law School, which had restricted military recruiters from its job fairs previously, announced that it would allow military recruiters to participate in its on-campus recruiting programs. *See* Thomas Kaplan, *Yale Law, Newly Defeated, Allows Military Recruiters,* The New York Times, October 1, 2007; John Christoffersen, *Yale Loses Court Case Over Military Recruiters*, Associated Press, September 19, 2007. It is not implausible to think that, faced with its own threat of losing 80 million

dollars, UCSC would act to insure the safety of military recruiters on campus.  Thus, contrary to

Defendant's claims, it is "likely as opposed to merely speculative" that Plaintiff's injury, the

inability to meet with military recruiters on campus, will be redressed if UCSC is faced with the

threat of losing federal funding.  *Lujan*, 403 U.S. at 560-61.  Defendant's argument that this

Court could not "begin to predict" the impact of the threat of a withdrawal of federal funds on

the behavior of UCSC is simply not accurate.  Def. Mot. Dismiss, 18.

Contrary to Defendant's assertion, Plaintiff has standing in this purported three-party

setting because there is "little doubt" that Defendant's action will affect UCSC's behavior.

*Renal Physicians Ass'n v. U.S. Dept. of Health and Human Services,* 489 F.3d 1267, 1275 (D.C.

Cir. 2007).  Standing may be established in a three-party setting "where the record present[s]

substantial evidence of a causal relationship between the government policy and the third-party

conduct, leaving little doubt as to causation and the likelihood of redress." *Id.*

Here, evidence of a causal relationship exists because colleges and universities have

complied with the Solomon Amendment in spite of their vocal opposition to it.  Defendant

claims that Yale Law School and other schools that oppose the Solomon Amendment "openly

challenged" the Solomon Amendment in *Rumsfeld*, 547 U.S. 47, and *Burt*, 502 F.3d 183.  But

tellingly, none of these legal challenges were filed by a college or university.  Instead, in

*Rumsfeld*, the challenge was filed by an entity whose law school and law school faculty members

are anonymous, *see Rumsfeld,* 547 U.S. 47, and in *Burt*, by individual law professors, *see Burt*,

502 F.3d 183.  The reason why colleges and universities have not filed legal actions in their own

names is obvious: they fear the loss of federal funds.

Here, if the Solomon Amendment were enforced and USCS stood to lose 80 million

dollars in federal funding, it is likely, if not certain, that UCSC would take steps to ensure that

military recruiters could meet with students on campus. Defendant focuses improperly on whether the behavior of faculty and students would change if the Solomon Amendment were enforced at UCSC. However, this is not the "third party" whose action must be predicted. The relevant third party here is UCSC. Plaintiff alleges that USCC, which has remained idle and tacitly approved of these protests and near riots, will change its behavior if Defendant enforces the Solomon Amendment.

Finally, Defendant has no right to raise, as a defense to a demand that he comply with federal law and enforce the Solomon Amendment, a claim that withholding federal funds from UCSC "will not work." Congress decided that all federal funds would be withheld from a college or university that violates the Solomon Amendment. Congress did so because it decided that just such a remedy will work. As the official responsible for enforcing (not enacting—reserved to Congress—or interpreting—reserved to this Court) the Solomon Amendment, Defendant may not be heard when he claims that the very remedy chosen by Congress to remediate a violation of the Solomon Amendment "will not work."

## **CONCLUSION**

Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss. Plaintiff's Amended Complaint includes a claim under the APA and thereby has remedied any purported jurisdictional deficiencies identified by Defendant. The Amended Complaint also establishes Plaintiff's Article III standing and shows that Defendant has a non-discretionary duty to act under the Solomon Amendment.

Pursuant to LCvR 7(f), Plaintiff hereby respectfully requests an oral hearing on this Opposition to Defendant's Motion To Dismiss.

Dated this 7th day of December, 2007.

Respectfully Submitted By:

MOUNTAIN STATES LEGAL FOUNDATION


/s/ William Perry Pendley
William Perry Pendley, D.C. Bar No. 378906
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
(303) 292-1980 (facsimile)
wppendley@mountainstateslegal.com

*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 7th day of December, 2007, I filed the attached Memorandum Of Points And Authorities In Response To Defendant's Motion To Dismiss electronically through the CM/ECF system, which caused the following to be served by electronic means:

Paul Freeborne
U.S. DEPARTMENT OF JUSTICE
Tax Division
555 Fourth Street, NW
Washington, DC 20001
(202) 353-0543
(202) 616-8460 (fax)
paul.freeborne@usdoj.gov

/s/ William Perry Pendley
_____
William Perry Pendley, Esq.
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
(303) 292-1980 (facsimile)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| Young America's Foundation, ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | Case No. 1:07-cv-01351-JDB |
| ) | |
| Robert M. Gates, Secretary, United States ) | |
| Department of Defense, ) | |
| ) | |
| *Defendant*. ) | |
| _____ ) | |

**DECLARATION OF FLAGG YOUNGBLOOD**

I, Flagg Youngblood, declare, pursuant to 28 U.S.C. § 1746, under penalty of

perjury, that the following is true and correct to the best of my knowledge:

1.    I am the Director of Military Outreach at Young America's Foundation

("YAF").

2.    My duties are to coordinate YAF's efforts to protect and restore ROTC on

college campuses and to defend the rights of high school, college, and graduate students to

meet with and hear from military recruiters on their campuses.

3.    YAF is a nonprofit foundation organized under section 501(c)(3) of the

Internal Revenue Code.  26 U.S.C. § 510(c)(3).

4.    YAF has approximately 209,094 students, alumni and supporters

nationwide.

5.    YAF was founded in 1969 by a group of college students at Vanderbilt

University; YAF's mission is to insure that increasing numbers of young Americans

understand and are inspired by the ideas of individual freedom, a strong national defense, free enterprise, and traditional values.

6.      YAF has 13 students who are currently enrolled at the University of California at Santa Cruz ("UCSC").

7.      Approximately six of YAF's students at UCSC have considered or are considering a career with the military.

8.      On or about April 5, 2005, UCSC held a job fair.

9.      At least one of YAF's students attended this job fair seeking to meet with military recruiters.

10.     Military recruiters were present during this job fair.

11.     Large-scale protests blocked access to military recruiters who were at the job fair.

12.     No YAF students were able meet with military recruiters at the April 5, 2005 job fair.

13.     On or about October 18, 2005, UCSC held a job fair.

14.     At least one of YAF's students attended this job fair seeking to meet with military recruiters.

15.     Military recruiters were present during this job fair.

16.     Once again, large-scale protests blocked access to military recruiters who were at the job fair.

17.     No YAF students were able to meet with military recruiters at the October 18, 2005 job fair.

18.    At least one of YAF's students sought to attend UCSC's January 31, 2007 job fair and meet with military recruiters; however, this job fair was ultimately canceled.

19.    On or about April 24, 2007, UCSC held a job fair.

20.    Military recruiters were not present at the April 24, 2007 job fair.

21.    YAF's students have sought and continue to seek to meet with military recruiters at UCSC job fairs.

22.    YAF's students have not been able to meet with military recruiters at a UCSC job fair in approximately two and a half years.


Dated this 7th day of December 2007.

_____
Flagg Youngblood