IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Young America's Foundation,<br><br>           Plaintiff,<br><br>           v.<br><br>Robert M. Gates, Secretary,<br>United States Department of<br>Defense<br><br>           Defendants. | Case No. 1:07-CV-01351<br>(Judge Bates) |

## DEFENDANT'S RENEWED MOTION TO DISMISS

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, defendant Robert M. Gates, Secretary of the United States Department of Defense, respectfully moves this Court to dismiss this action. The grounds in support of this motion are set out more fully in the attached memorandum in support of the Secretary's renewed motion to dismiss.

                                                                 Respectfully submitted,

                                                                 JEFFREY S. BUCHOLTZ
                                                                   Acting Assistant Attorney General

                                                                 JEFFREY A. TAYLOR
                                                                   United States Attorney

                                                                 VINCENT M. GARVEY
                                                                 Deputy Branch Director

                                                /s/ Paul G. Freeborne
                                                PAUL G. FREEBORNE
                                                Department of Justice
                                                Civil Division, Federal Programs Branch
                                                20 Massachusetts Ave., NW,
                                                Washington, D.C. 20530
                                                Tel: (202) 353-0543
                                                Fax: (202) 616-8460

Dated: January 14, 2008                              *Counsel for the Federal Defendant*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| Young America's Foundation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:07-CV-01351 |
| | ) | (Judge Bates) |
| Robert M. Gates, Secretary, | ) | |
| United States Department of | ) | |
| Defense | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE
SECRETARY'S RENEWED MOTION TO DISMISS**

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

VINCENT M. GARVEY
Deputy Branch Director

PAUL G. FREEBORNE
Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW,
Washington, D.C. 20530
Tel: (202) 353-0543
Fax: (202) 616-8460

Dated: January 14, 2008                    *Counsel for the Federal Defendant*

**TABLE OF CONTENTS**

**PAGE**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.       The APA Does Not Provide Subject-Matter Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.      YAF Has Failed To Demonstrate Associational Standing . . . . . . . . . . . . . . . . . . . . . . . 9

        A.       YAF Has Failed To Identify A Single UCSC Student Among
                 Its Membership Who Would Have Standing to Sue In Their
                 Own Right . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        B.       YAF Has Failed To Show That Any Harm Is Redressable
                 Through An Order Requiring The Termination
                 of Federal Funding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**INTRODUCTION**

In response to the original complaint filed by plaintiff, Young America's Foundation ("YAF"), the Secretary filed a motion to dismiss (Dkt. No. 7) demonstrating that the Court lacks jurisdiction to order the Secretary to undertake enforcement action against the University of California at Santa Cruz ("UCSC") for alleged violation of the Solomon Amendment. YAF does not dispute that the Solomon Amendment, the general grant of federal question jurisdiction, 28 U.S.C. § 1331, and the mandamus statute, id. § 1361, which it relied upon as a basis for jurisdiction in the original complaint, fail to waive sovereign immunity. YAF instead asserts that "this case fits squarely within the [Administrative Procedure Act's ("APA's")] parameters" (Opp. at 1), and amends its complaint to assert that statute as the basis for jurisdiction. Amended Compl., ¶ 1.

But as noted in the Secretary's October 9, 2007 motion (Memo. at 12, n.3), the APA expressly precludes judicial review of agency action "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). This applies to the Secretary's decision regarding whether to undertake enforcement action under the Solomon Amendment. The Supreme Court has recognized "over many years that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." Heckler v. Chaney, 470 U.S. 821, 831 (1985) (citing United States v. Batchelor, 442 U.S. 114, 123-24 (1979)). An agency's discretion when making decisions to prosecute or enforce "is attributable in no small part to the general unsuitability for judicial review of . . . decisions to refuse enforcement." 470 U.S. at 831. The Secretary renews his motion to dismiss and requests that the action be dismissed, pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject-matter

jurisdiction.[1]

     Even if the Court had subject-matter jurisdiction, YAF also fails to establish standing to sue.  While YAF apparently attempts to continue to assert associational standing on behalf of students at UCSC, it continues to fail to identify a single student among its membership that has suffered any of the harm alleged in the amended complaint.  Indeed, other than to now allege in its amended complaint that it has 13 students who are currently enrolled at the UCSC, Amended Compl., ¶ 5, and that six of those students would like to meet and interview with military recruiters at job fairs conducted by UCSC, id., ¶6, YAF fails to identify any students by name and show how each has been individually harmed by the student and faculty protests that have allegedly blocked recruiter access to the UCSC campus.  It is well settled that a plaintiff invoking associational standing must show that "its members would otherwise have standing to sue in their own right[.]"  Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977).  To satisfy this burden, "the identity of the party suffering an injury in fact must be firmly established."  American Chem. Council v. Department of Transp., 468 F.3d 810, 820 (D.C. Cir. 2006).  Because YAF has failed to do so, the Court has no way of knowing whether a live case or controversy exists for the Court to resolve.  The Court can thus dismiss this action for this reason alone.

---

[1]     At a minimum, as explained in the Secretary's October 9, 2007 motion to dismiss (Memo. at 19-20), which is incorporated by reference, no basis exists for the Court to enter a mandamus order against the Secretary compelling the termination of federal funding.  Such an order is a drastic remedy, and is only granted where the responsibility is a ministerial one.  13th Reg'l Corp. v. United States Dep't of Energy, 654 F.2d 758, 760 (D.C. Cir. 1980).  Because the Secretary's decision regarding whether to take enforcement action against an institution such as UCSC is a matter in which he has discretion, YAF's request can be dismissed on the merits.

Nor can YAF show that any harm allegedly suffered by the unidentified students will likely be redressed by the relief sought. Under the amended complaint, the claimed obstacle presented to military recruiters remains protests by student and faculty. Even if the Court were to order the Secretary to undertake the requested enforcement action and further require the Secretary to terminate federal funding to the UCSC, it is impossible to know whether that relief would quell protests. The action can be dismissed on the alternative ground that YAF lacks standing to sue.

## ARGUMENT

**I.    The APA Does Not Provide Subject-Matter Jurisdiction**

YAF asserts that the jurisdictional defects in its original complaint are now cured by the amended complaint which cites the APA as a basis for jurisdiction. Opp. at 2. While YAF is correct in observing that the APA is generally available to review agency action, Opp. at 3, section 701(a)(2) expressly precludes judicial review of agency action "committed to agency discretion by law." 5 U.S.C.§ 701(a)(2). According to YAF's amended complaint, YAF seeks an order from this Court mandating that, pursuant to the Solomon Amendment, the Secretary to initiate an enforcement action and terminate federal funding to the UCSC because of the alleged student and faculty protests which have purportedly prevented military recruiters from gaining access to UCSC's campus. Amended Compl., ¶'s 36, 39. Because the Secretary's enforcement decisions involve questions of unfettered prosecutorial discretion that are not properly subject to judicial review, Section 701(a)(2) applies and expressly precludes judicial review.

Based largely upon separation of power concepts, the Supreme Court has recognized "over many years that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." Heckler, 470 U.S. at 831 (citing United States v. Batchelor, 442 U.S. 114, 123-24 (1979)); United States v. Nixon, 418 U.S. 683, 693 (1974); Vaca v. Sipes, 386 U.S. 171, 182 (1967); Confiscation Cases, 74 (7 Wall.) 454 (1868)). In Chaney, inmates brought an action under the APA to compel the Food and Drug Administration ("FDA") to take enforcement action under the Federal Food, Drug, and Cosmetic Act with respect to drugs used for lethal injections to carry out the death penalty. The Supreme Court found that section 701(a)(2) precluded review.

Like here, Chaney "turn[ed] on the important question of the extent to which determinations by [an agency] *not to exercise* its enforcement authority . . . may be judicially reviewed." 470 U.S. at 828 (emphasis in original). The court of appeals had insisted upon a "narrow construction of [section 701(a)(2)]" and ruled that the "presumption of reviewability [extended] to an agency's decision not to undertake certain enforcement actions." Id. at 831. The Supreme Court reversed that decision, finding that the court of appeals' approach to judicial review "broke with tradition, case law, and sound reasoning." Id. The Supreme Court explained that an agency's decision not to undertake enforcement is unsuitable for judicial review because it "often involves a complicated balancing of a number of factors which are particularly within its expertise." Id.

Among the factors that must be considered include not only "whether a violation has occurred, but whether agency resources are best spent on [one] violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action required best fits

the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the action at all." Id.  The Court explained, "when an agency refuses to act it generally does not exercise its coercive power over an individual's liberty or property rights, and thus does not infringe upon areas that courts often are called upon to protect." Id. at 832.  "[A]n agency's refusal to institute proceedings shares to some extent the characteristics of the decision of a prosecutor in the Executive Branch not to indict -- a decision which has long been regarded as the special province of the Executive Branch, in as much as it is the Executive who is charged by the Constitution to 'take care that the law be faithfully executed.'" Id. (citing U.S. Const., Art. II, §3).

In recognition of these principles, the D.C. Circuit has thus recognized that an agency's "ultimate decision not to undertake enforcement action is nonreviewable." International Union, United Auto., Aerospace & Agric. Implement Workers of America v. Brock, 783 F.2d 237, 246 (D.C. Cir. 1986) (citing Chaney).  In Brock, a labor union and others brought action challenging the decision of the Secretary of Labor not to bring a civil enforcement action against an employer and its labor relation consultants for allegedly failing to comply with the reporting and disclosure provisions of the Labor-Management Reporting and Disclosure Act.  Finding that Chaney "clearly controls" such an enforcement decision, id., the court held that judicial review was precluded by section 701(a)(2).  The court stated "that there is no review available from the agency's specific nonenforcement decision . . . or its overall pattern of decisions not to pursue enforcement" in the areas requested in the complaint.  Id. at 245.  See also Wood v. Herman, 104 F. Supp. 2d 43, 47-48 (D.D.C. 2000) (finding Secretary of Labor's decision not to bring enforcement action under section 11(c) of the Occupational Safety and Health Act is not

reviewable by the court under section 701(a)(2)); Giacobbi v. Biermann, 780 F. Supp. 33, 37-38 (D.D.C. 1992) (finding Secretary of Labor's decision not to conduct a prompt investigation of complaint filed under the Rehabilitation Act "is the type of decision Chaney holds is exclusively the agency's to make" and is thus unreviewable under section 701(a)(2)). The same result must be reached here.

YAF fails to seriously grapple with Chaney. YAF cites Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402 (1971), for the proposition that section 701(a)(2) is a rare exception. Opp. at 5. While true, as explained in Chaney, "Overton Park did not involve an agency's refusal to take requested enforcement action." 470 U.S. at 831. Overton Park instead involved the Secretary of Transportation's approval of the building of an interstate highway through a park and involved "clear guidelines for determining whether such approval should be given." Id. "Refusals to take enforcement steps generally involve precisely the opposite situation" and thus give rise to a presumption "that judicial review is not available." Id.

YAF also claims that the presumption against reviewing the Secretary's enforcement decisions is overcome here because "Congress has created a roadmap to guide judicial interpretation of the Solomon Amendment." Opp. at 5. In this regard, YAF draws upon the statute's statement that "[n]o funds . . . may be provided" to an institution that fails to provide access to military recruiters that is "at least equal in quality and scope" to the access provided to any other employer. Opp. at 6. According to YAF, "the D.C. Circuit has explained that even minimal guidance, that assists the court in determining whether agency action is unlawful, is sufficient to overcome the restriction of section 701(a)(2). Opp. at 5 (citing Alliance to Save Mattaponi v. United States Army Corp. of Eng's, 515 F. Supp. 2d 1, 8 (D.D.C. 2007)).

At issue in Mattaponi, however, was an agency's decision not to veto a permit. Id. at 9. As the court explained, such a decision "does not involve to the same extent the difficult decisions regarding manpower and allocation of resources that inform enforcement decisions and give rise to a hesitancy to undertake judicial review." Id. at 8. Where, as here, the decision is whether to undertake an enforcement decision, the presumption against review can only be overcome "where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers." Chaney, 470 U.S. at 832-33. "Congress may limit an agency's exercise of enforcement power if it wishes, either by setting substantive priorities, or by otherwise circumscribing an agency's power to discriminate among issues or cases that it will pursue." Id. at 833.

The referenced language from the Solomon Amendment fails to do so. Like the language in Chaney, the "no funds" and "at least equal in quality and scope" provisions of the Solomon Amendment are substantive provisions only and do not purport to direct the Secretary when to undertake an enforcement action. In Chaney, the statute prohibited the "misbranding and the introduction of new drugs absent agency approval" and stated that any person who violates the statute's substantive provisions "shall" be imprisoned or fined. 470 U.S. at 835. The Court "summarily" rejected the argument that this language permitted review, finding that it contained no indication by Congress that the agency was required to undertake a criminal prosecution of every violator and was thus "simply irrelevant to the agency's discretion to refuse to initiate proceedings. 470 U.S. at 836. If anything, the "no funds" and "at least equal in quality and scope" language YAF relies upon in the Solomon Amendment is even less relevant. The "no funds" language does not mandate an enforcement action; it merely applies after one has been

undertaken and is successful. The "at least equal in quality and scope" language also does not direct that enforcement action be undertaken, or purport to "limit an agency's exercise of enforcement power if it wishes, either by setting substantive priorities, or by otherwise circumscribing an agency's power to discriminate among issues or cases that it will pursue." Id. at 833

Nor do the regulations (32 C.F.R. § 216), which YAF also relies upon. Opp. at 7-8. Under the regulations, "[a]n evaluation to determine whether a covered school maintains a policy or practice . . . shall be undertaken when . . . [m]ilitary recruiting personnel cannot gain entry to [a] campus, cannot obtain access to students on campus, or are denied access to student recruiting information[.]" 32 C.F.R. § 216.4(f)(1). "When requests by military recruiters to schedule recruiting visits or obtain student recruiting information are unsuccessful, the Military Service concerned shall seek written confirmation of the school's present policy from the head of the school through a letter of inquiry." Id. § 216.5(b)(1)(i). UCSC has an established written policy permitting equal access to military recruiters. http://www.ucop.edu/raohome/cgmemos/94-09.html.

The regulations are silent about what enforcement actions must be undertaken when, despite such a written policy, student and faculty protests nonetheless allegedly prevent recruiter access. The regulations require the appropriate Service to "[e]valuate responses to the letter of inquiry, and such other evidence obtained . . . , and submit such information to the [Assistant Secretary of Defense] the names and addresses of covered schools believed to be in violation of policies established" in the regulations. Id. § 216.5(b)(3). Because of First Amendment considerations, however, neither the regulations nor DOD policy "direct institutions dealing with

opposition, if any, to DOD policies." Identification of Institutions of Higher Learning That Bar Recruiting Personnel From Their Premises, 49 Fed. Reg. 22,800, 22,802 (1984).

Lastly, the Supreme Court's decision in Rumsfeld v. Forum for Academic and Inst. Rights, 547 U.S. 47 (2006) ("FAIR") does not, and cannot, rebut the presumption against review. Opp. at 5, 7-8. That presumption can only be overcome through statute (or by an agency through regulation), not by the courts. Chaney, 470 U.S. at 835-36. The Secretary is "far better equipped than courts to deal with the many variables involved" in deciding whether to undertake an enforcement action under the Solomon Amendment. Chaney, 470 U.S. at 832. This is particularly the case under the facts alleged here. Although ignored by YAF, the FAIR Court recognized that the right to recruiter access under the statute must be balanced against the right of students and faculty members "to associate to voice their disapproval" of the military. FAIR, 547 U.S. at 69. The Secretary has the enforcement discretion to balance both of these interests here.

The action should accordingly be dismissed for lack of subject-matter jurisdiction.

## II. **YAF Has Failed To Demonstrate Associational Standing**

YAF, moreover, has failed to demonstrate associational standing to challenge the Secretary's enforcement of the Solomon Amendment. Because Article III, § 2, of the Constitution "extends the 'judicial power' of the United States only to 'Cases' and 'Controversies[,]'"Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102 (1998), this provides an alternative grounds for the Court to dismiss this action for lack of subject-matter jurisdiction.

Article III standing requires that a plaintiff have suffered "an (1) injury in fact--an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or

imminent, not conjectural or hypothetical--(2) which is fairly traceable to the challenged act, and (3) likely to be redressed by a favorable decision." Nat'l Treasury Employees' Union v. United States, 101 F.3d 1423, 1427 (D.C. Cir. 1996) (internal quotation marks and citation omitted). See also Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). Nowhere in the amended its complaint does YAF show that it has standing to sue on behalf of its members, or that the relief requested would address any such harm. The action must thus be dismissed for this additional reason.

### A. YAF Has Failed To Identify A Single UCSC Student Among Its Membership Who Would Have Standing to Sue In Their Own Right

The doctrine of standing is "an essential and unchanging part of the case-or-controversy requirement of Article III," Lujan, 504 U.S. at 560, and "the party invoking federal jurisdiction bears the burden of establishing its existence." Steel Co., 523 U.S. at 104 (citation omitted). To establish associational standing, YAF must demonstrate as a threshold matter that "its members would otherwise have standing to sue in their own right[.]" Hunt, 432 U.S. at 343; see also National Wrestling Coaches Ass'n v. Department of Educ., 366 F.3d 930, 937 (D.C. Cir. 2004) (same). To satisfy this burden, "an organization bringing a claim based on associational standing must show that at least one **specifically-identified** member has suffered an injury-in-fact." American Chem. Council v. Department of Transp., 468 F.3d 810, 820 (D.C. Cir. 2006) (emphasis added); see also American Immigration Lawyers Assoc. v. Reno, 18 F. Supp. 2d 38, 51 (D.D.C. 1998) (recognizing that associational plaintiff's obligation to show that one or more of its members have suffered harm "extends to identifying the member or members of plaintiff organizations that have, or will suffer, harm."). Other courts have reached the same conclusion. See National Coalition for Students with Disabilities v. Miller, 298 F. Supp. 2d 16, 21 (D.D.C.

2002) (finding advocacy group lacked associational standing to challenge Maryland's and the District of Columbia's implementation of the National Voter Registration Act where it "failed to identify . . . specific members with injuries[.]"); Arbor Hill Concerned Citizens Neighborhood Ass'n v. City of Albany, 250 F. Supp. 2d 48, 56 (N.D.N.Y. 2003) (finding neighborhood association failed to demonstrated standing to sue city and its officials alleging various violations of federal regulations governing lead-based paint activities where association declined to name any of its members in the complaint and failed to allege that any specific member had lead-based paint work performed on his or her home); National Alliance for the Mentally Ill v. Board of County Comm'rs, 376 F.3d 1292, 1296 (11th Cir. 2004) (finding organizations failed to establish associational standing to sue Board of County Commissioners for its decision not to fund a mental health treatment facility where organizations failed to "identify an injured constituent prevented them from asserting associational standing").

YAF fails to carry its burden in this regard. Other than to now allege in its amended complaint that it has 13 students who are currently enrolled at the UCSC, Amended Compl., ¶ 5, and that six of those students would like to meet and interview with military recruiters at job fairs conducted by UCSC, id. ¶6, YAF continues to fail to identify by name any UCSC students it purports to represent, and explain each student's individualized harm. Indeed, it is telling that YAF cannot even say which of the six unidentified students who purportedly have an interest in the military have been denied the opportunity to meet with a recruiter: The best that it can offer is the claim "[a]t least one of [its] members, who sought to meet with military recruiters, has attended a UCSC job fair since April 2005 at which military recruiters were not present." Opp. at 13.

Mr. Youngblood's declaration offers no more detail as to the identity of any of these students or harm. Beyond repeating the general allegations contained in the amended complaint, the declaration simply states YAF's mission is to "insure that increasing numbers of young Americans understand and are inspired by the ideas of individual freedom, a strong national defense, free enterprise, and traditional values." Youngblood Decl., ¶ 5. The D.C. Circuit has recognized that "'a mere special interest' in a subject [does] not empower an organization to bring suit in federal court if it [can] identify no injured member." Humane Soc'y of the United States v. Hodel, 840 F.2d 45, 54 n. 15 (D.C. Cir. 1988) (quoting Sierra Club v. Morton, 405 U.S. 727 (1972)).

To the extent YAF even attempts to establish associational standing, such an attempt is based upon general, conclusory allegations about its membership and the students who are allegedly members of its association. The D.C. Circuit has rejected such an approach. In American Chem. Council, for example, associations of hazardous materials manufacturers, shippers, and transporters petitioned for review of a Department of Transportation rule defining when hazardous materials are being loaded, unloaded, or stored incidental to their movement and are subject to Hazardous Materials Transportation Act. Like here, the petitioner-associations failed to identify any specific member of its association who would have standing to bring suit in their own right. Petitioners instead attempted to rest upon general allegations, stating that "the record of th[e] rulemaking demonstrates that each association has numerous members that are subject to the rules at issue, and would have individual standing to file for review of the final rule[.]" 468 F.3d at 815. The court rejected this approach, finding the plaintiff to have failed to carry its "burden to produce evidence" of a "specific harm to a specific party[.]" Id. at 820-21

-12-

The same conclusion was reached in Fund Democracy v. SEC, 278 F.3d 21 (D.C. Cir. 2002). The Fund claimed to be an advocate and information resource for mutual fund investors and attempt to seek review of an SEC order on behalf of investors it failed to identify. The Fund's standing claim rested upon the claim that it served as "an advocate and information resource for mutual fund shareholders through a multi-faceted advocacy and educational program." Id. at 25. The D.C. Circuit found such allegations to be insufficient to demonstrate associational standing, finding such allegations fail to carry plaintiff's burden to show that "any of the individual mutual fund investors it claims as 'members' having standing to sue in their own right." Id. at 25. The same is true here; YAF has failed to establish standing to sue.

### B. YAF Has Failed To Show That Any Harm Is Redressable Through An Order Requiring The Termination of Federal Funding

In any event, YAF has failed to demonstrate that the student and faculty protests that have purportedly blocked recruiter access would stop if the Secretary terminated federal funding to the UCSC. "[A]lthough less is required to survive a motion to dismiss than a motion for summary judgment, . . . a bald allegation of standing is not enough to survive even a motion to dismiss where neither the factual allegations nor their logic establish redressability." Renal Physicians Ass'n v. HHS, 489 F.3d 1267, 1278 (D.C. Cir. 2007) (citing National Wrestling Coaches Ass'n, 366 F.3d at 938, 941-43). Mere "'unadorned speculation' as to the existence of a relationship between the challenged government action and the third-party conduct 'will not suffice to invoke the federal judicial power.'" National Wrestling Coaches Ass'n, 366 F.3d at 938 (quoting Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 44 (1976)). When "causation and redressablity hinge on the response of others, . . . it becomes the burden of the plaintiff to adduce facts showing that

. . . choices [of the independent actors] have been or will be made in such manner as to produce causation and permit the redressability of the injury." Renal Physicians Ass'n, 489 F.3d at 1273 (quoting Lujan, 504 U.S. at 562). YAF has not, and cannot, adduce facts to carry its burden.

YAF claims that "if the Solomon Amendment were enforced and UCSC stood to lose 80 million dollars in federal funding, it is likely, if not certain, that UCSC would take steps to ensure that military recruiters could meet with students on campus." Opp. at 15-16. YAF, however, does not, and cannot, say that such a measure would stop student and faculty protests. YAF instead seeks to refocus attention away from such protests, which are centerpiece of its complaint, and toward UCSC who it alleges "remained idle and tacitly approved of these protests and near riots." Opp. at 16. As noted, however, UCSC has an established written policy permitting equal access to military recruiters. http://www.ucop.edu/raohome/cgmemos/94-09.html.

But even if the Court were to ignore this fact, it would fail to distinguish this case from The Freedom Republicans which the Secretary cited in support of his October 9, 2007 motion to dismiss but YAF failed to address. There, the D.C. Circuit held that an independent, multiracial organization of Republicans, lacked standing to challenge the Federal Election Commission's ("FEC's") funding of the Republican National Convention on the grounds that the Republican Party's delegate-selection processes discriminated against minority groups. The court found that, although the level of FEC funding was substantial, the alleged injury was not fairly traceable to any encouragement by the Government and the court could not "begin to predict" the impact of withdrawal of federal funding on the Party's decisions as to delegate selection. 13 F.3d at 418-19. The same is true here. The Secretary and UCSC stand in the same relationship

-14-

as the Republican Party and the FEC stood in <u>The Freedom Republicans</u> case.  And while federal funding to UCSC may be substantial and no doubt important to the University's mission, the Court could not likewise "begin to predict" the impact of withdrawing that funding would have on the institution's ability to quell student and faculty protests any more than the court could predict the effect that withdrawal of federal funding on the delegate selection process in the <u>The Freedom Republicans</u> case.  YAF thus fails to establish associational standing.

## CONCLUSION

Based upon the foregoing and the arguments set forth in the Secretary's October 9, 2007 motion to dismiss, the action set forth in YAF's amended complaint should be dismissed.

                Respectfully submitted,

                JEFFREY S. BUCHOLTZ
                Acting Assistant Attorney General

                JEFFREY A. TAYLOR
                United States Attorney

                VINCENT M. GARVEY
                Deputy Branch Director

                <u>/s/ Paul G. Freeborne</u>
                PAUL G. FREEBORNE
                Department of Justice
                Civil Division, Federal Programs Branch
                20 Massachusetts Ave., NW,
                Washington, D.C. 20530
                Tel: (202) 353-0543
                Fax: (202) 616-8460

January 14, 2007                *Counsel for the Federal Defendant*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                    )
Young America's Foundation,         )
                                    )
            Plaintiff,              )
                                    )
      v.                            )   Case No. 1:07-CV-01351
                                    )
Robert M. Gates, Secretary,         )
United States Department of         )
Defense                             )
                                    )
            Defendants.             )
_____ )

## ORDER

Upon consideration of defendant's renewed motion to dismiss, and the entire record herein, it is hereby

ORDERED that defendant's motion to dismiss is GRANTED; and it is

FURTHER ORDERED, that this action is dismissed.


Dated: _____, 2008              _____
                                        John D. Bates
                                        United States District Judge