IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Young America's Foundation,<br><br>    *Plaintiff,*<br><br>v.<br><br>Robert M. Gates, Secretary, United States Department of Defense,<br><br>    *Defendant.* | Case No. 1:07-cv-01351-JDB |

**PLAINTIFF YOUNG AMERICA'S FOUNDATION'S**

**SUR REPLY**

WILLIAM PERRY PENDLEY, Bar No. 378906
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, Colorado 80227
Tel.: (303) 292-2021
Fax: (303) 292-1980

*Counsel for Plaintiff*

Dated: January 25, 2008

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT.........................................................................................................................1

II.   THE DOD'S INACTION FORECLOSES IT FROM CLAIMING THAT THIS
      COURT CANNOT REVIEW THIS ACTION............................................................1

III.  YAF HAS STANDING ................................................................................................3

      A.  YAF Has Identified Specific Individualized Injuries In Accordance With the
          *Lujan* Standard. ...................................................................................................3

      B.  YAF's Injury Is Redressible................................................................................4

CONCLUSION......................................................................................................................6

## INTRODUCTION

In its latest submission, Defendant, once again, abdicates his duty to enforce federal law, this time by claiming bureaucratic helplessness. Thus, despite a clear mandate by Congress, the Department of Defense ("DOD") seeks to shield itself from its responsibility and obligation to enforce the Solomon Amendment by claiming that the manner in which it enforces that federal law, even if characterized by egregious inaction, is unreviewable. The DOD also claims that it may not be compelled to enforce the Solomon Amendment as to the University of California at Santa Cruz ("UCSC") because this Court could not begin to predict what kind of impact the threat of withdrawing $80 million in federal funding might have on the UCSC.

Defendant's arguments carry little force. The fact is, this case is well suited to judicial review, and it is likely, if not certain, that if Young America's Foundation's ("YAF's") claims for relief are granted, the ongoing violations of the Solomon Amendment at the UCSC will cease.

## ARGUMENT

**I.    THE DOD'S INACTION FORECLOSES IT FROM CLAIMING THAT THIS COURT CANNOT REVIEW THIS ACTION.**

The DOD goes to great lengths to explain why its willful blindness to violations of federal law is unreviewable. However, the DOD's unwillingness even to *investigate* the many incidents in which military recruiters were driven violently from the UCSC campus represents more than just a "complicated balancing of a number of factors which are particularly within [the DOD's] expertise." Def. Renewed Mot. To Dismiss, 4, *citing Heckler v. Chaney*, 470 U.S. 821, 828 (1985). Rather, the DOD's inaction represents a total abandonment of its mandatory statutory obligations under the Solomon Amendment, that can—and should—be reviewed by this Court. *Sierra Club v. Thomas*, 828 F.2d 783, 792 (D.C.Cir.1987). *See also Public Citizen*

1

*Health Research Group v. Commissioner, FDA*, 740 F.2d 21, 32 (D.D.C. 1984) ("When agency recalcitrance is in the face of a clear statutory duty or is of such a magnitude that it amounts to an abdication of statutory responsibility, the court has the power to order the agency to act to carry out its substantive mandates.")

      The DOD's response to the activities at the UCSC has been atrociously lax.  In April 2005, as many as 200 faculty and student protesters violently ousted military recruiters from a UCSC job fair.  Am. Compl., ¶ 10.  Again in October of that year, hundreds of faculty and students blocked access to military recruiters at a job fair.  *Id.* at ¶ 15.  In April 2006, military recruiters were forced to flee a job fair due to violence by students and faculty.  *Id.* at ¶ 19.  A January 2007 job fair was cancelled due to safety concerns associated with violent anti-military recruiting protests.  *Id.* at ¶ 24.  Finally, in April of 2007, military recruiters withdrew from a job fair citing safety concerns associated with the protesters.  *Id.* at ¶ 24.  Thus, in 2007, no military recruiting took place on the UCSC campus, due to the violent protests of the previous years.  *Id.* at ¶ 25.  Therefore, for more than three years, the military has been unable to access the UCSC campus and its students and consequently, the military has been denied the congressionally-mandated access required to receive federal funds under the Solomon Amendment.

      Yet, in spite of the Solomon Amendment's clear mandate, and UCSC's perennial humiliation of the U.S. military, the DOD has done nothing.  It has not deemed UCSC in violation of the Solomon Amendment, nor, even initiated an investigation into whether the activities at UCSC might represent a violation of the Solomon Amendment.  The DOD has essentially given up on enforcing the Solomon Amendment at UCSC.   This extraordinary recalcitrance, in the face of a clear statutory duty, is exactly the kind of "abdication of statutory responsibility" that the D.C. Circuit deemed to be reviewable in *Sierra Club*.  828 F.2d at 792.

Faced with overwhelming evidence that the Solomon Amendment is being violated, the DOD cannot shield itself from its statutory responsibility by claiming that this Court lacks jurisdiction—especially when the DOD has not even investigated, or otherwise taken the bare minimum steps toward fulfillment of its duty under federal law.

**II.     YAF HAS STANDING.**

    **A.     YAF Has Identified Specific Individualized Injuries In Accordance With the *Lujan* Standard.**

YAF has demonstrated that "its members would otherwise have standing to sue in their own right. . . ." *Natural Resources Defense Council v. E.P.A.*, 489 F.3d 1364 (D.C. Cir. 2007), *citing Hunt v. Washington State Apple Advertising Com'n,* 432 U.S. 333, 343 (1977). YAF's allegations more than sufficiently establish standing because YAF has alleged that at least one of its members has standing to sue in his own right. *Id.* ¶ 8-22. Moreover, this action does not require the participation of individual YAF members. There are no factual disputes that necessitate the presence of YAF members in this litigation; in fact, it is well known that military recruiters have been unable to access UCSC campus and its students, some of whom are YAF members, for three years.

Moreover, despite the DOD's attempt to show that YAF's failure to identify a specific member dooms its standing, at this stage, YAF is not required to reveal its membership list. *See Forum for Academic and Institutional Rights, Inc. v. Rumsfeld*, 291 F.Supp.2d 269, 287 (D.N.J. 2003) ("*FAIR*"). In *FAIR,* the plaintiffs challenged the constitutionality of the statute at issue here, the Solomon Amendment. The plaintiff-organization kept its membership list secret "to allay members' fears of retaliatory efforts on behalf of the government and private actors. . . ." *Id.* However, because *FAIR* alleged "facts establishing that one or more of its members have suffered an injury sufficient to confer standing in their own right," the Court properly permitted

3

*FAIR* to proceed. *Id.* The court explained that "it is enough for the representational entity to allege that one of its members or constituents has suffered an injury that would allow it to bring suit in its own right." *Id. citing Doe v. Stincer,* 175 F.3d 879, 881 (11th Cir. 1999). Thus, contrary to the DOD's assertions, YAF, at this stage, must only identify that it has injured members.

      **B.**      **YAF's Injury Is Redressible.**

In cases such as this one, when the plaintiff claims that the government's failure to act proximately caused another party's injurious behavior, the redressability inquiry is slightly different than in a traditional two-party case. *Competitive Enterprise Inst. v. NHTSA,* 901 F.2d 107, 113 (D.C.Cir.1990). To establish redressability, the court must focus on the causal connection between the asserted injury and judicial relief and predict whether plaintiff's injuries can be redressed by the lawsuit. *Allen v. Wright,* 468 U.S. 737, 753 n. 19 (1984).

Here, a prediction may not even be necessary because a previous Solomon Amendment case has demonstrated already what happens when a university is threatened with a loss of its federal funding. In September 2007, when the U.S. Court of Appeals for the Second Circuit upheld the constitutionality of the Solomon Amendment, it placed Yale University at risk of losing $350 million in federal funds because of Yale Law School's refusal to admit military recruiters. Immediately thereafter, Yale Law School announced that it would allow military recruiters to participate in its on-campus recruiting programs. S*ee Burt v. Gates*, 502 F.3d 183 (2d. Cir. 2007). *See also* Thomas Kaplan, *Yale Law, Newly Defeated, Allows Military Recruiters,* The New York Times, October 1, 2007; John Christoffersen, *Yale Loses Court Case Over Military Recruiters*, Associated Press, September 19, 2007.

4

Likewise, faced with the threat of losing 80 million dollars, it is all but certain that UCSC will act to ensure the safety of military recruiters on campus. This is not to say that UCSC must completely terminate all protests on campus and offend the First Amendment rights of its students as suggested by Defendant—quite the contrary.

The Solomon Amendment and the First Amendment are not mutually exclusive. The UCSC must simply take steps to ensure that military recruiters can access students in a manner that is equal in quality and scope to that of other recruiters as compelled by the Solomon Amendment. 10 U.S.C. § 983(b)(1). *See also Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 57 (2006). UCSC's administrators, faculty members, and students will "remain free under the statute to express whatever views they may have on the military's congressionally mandated employment policy, all the while retaining eligibility for federal funds." *Id. See also Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 2005 WL 3387694, No. 04-1152, Transcript of oral argument at 25 (U.S. December 6, 2005) (Solicitor General acknowledging that law schools "could put signs on the bulletin board next to the door, they could engage in speech, they could help organize student protests"). Ultimately, "the Solomon Amendment regulates conduct, not speech. It affects what law schools must *do*— afford equal access to military recruiters—not what they may or may not *say*." *Rumsfeld,* 542 U.S. at 57 (emphasis in original). The DOD's assertion of UCSC's First Amendment concerns are essentially a red herring.

Defendant also makes much of the facts of the *Freedom Republicans, Inc. v. Federal Election Com'n,* 13 F.3d 412 (D.C.Cir. 1994). In *Freedom Republicans*, the Court had to predict whether a threat that the Federal Election Commission ("FEC") might withdraw its funding from the Republican National Convention ("RNC") would compel the RNC to change is practice of

5

allocating delegates.  However, *Freedom Republicans* is inapposite to this case for two reasons.  First, *Freedom Republicans* addressed a time-honored presidential delegate selection system that had been in place since 1912.  *Id.* at 419.  Second, in *Freedom Republicans*, the Court noted that the plaintiff had adduced no evidence to suggest that withdrawing FEC funding might cause the RNC to change its delegate selection practices.  *Id.*  Here, however, YAF has demonstrated that withdrawing the UCSC's federal funding will compel it to modify its behavior, and provided an example of a similar case to support its argument.

Finally, the DOD may not argue that the mandatory duty that Congress imposed upon it and the mechanism chosen by Congress to ensure compliance with the Solomon Amendment "will not work."  Congress has determined the sanction to be imposed on universities like the UCSC when they do not allow military recruiters the same access as other would-be employers.  The DOD may not question whether that sanction will have the effect desired by Congress; instead, all that DOD may do, given the mandatory duty imposed on it by federal statute, is to enforce the law.

## **CONCLUSION**

YAF respectfully requests that this Court deny Defendant's Motion to Dismiss.

Pursuant to LCvR 7(f), Plaintiff hereby respectfully requests an oral hearing on Defendant's Opposition to Defendant's Motion To Dismiss and Renewed Motion To Dismiss.

Dated this 25th day of January, 2008.

      Respectfully Submitted By:

      MOUNTAIN STATES LEGAL FOUNDATION


/s/ William Perry Pendley
William Perry Pendley, D.C. Bar No. 378906
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
(303) 292-1980 (facsimile)
wppendley@mountainstateslegal.com

*Counsel for Plaintiff*

Case 1:07-cv-01351-JDB   Document 14   Filed 01/25/2008   Page 9 of 10

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on the 25th day of January, 2008, I filed the attached Young America's Foundation's Sur Reply electronically through the CM/ECF system, which caused the following to be served by electronic means:

Paul Freeborne  
U.S. DEPARTMENT OF JUSTICE  
Tax Division  
555 Fourth Street, NW  
Washington, DC 20001  
(202) 353-0543  
(202) 616-8460 (fax)  
paul.freeborne@usdoj.gov

                                  /s/ William Perry Pendley  
                                  William Perry Pendley, Esq.  
                                  2596 South Lewis Way  
                                  Lakewood, Colorado 80227  
                                  (303) 292-2021  
                                  (303) 292-1980 (facsimile)