IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| Young America's Foundation, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:07-CV-01351-JDB |
| | ) |
| Robert M. Gates, Secretary, | ) |
| United States Department of | ) |
| Defense | ) |
| | ) |
| Defendants. | ) |

**REPLY IN SUPPORT OF THE SECRETARY'S RENEWED MOTION TO DISMISS**

The Young America's Foundation ("YAF") persists in its efforts to have the Court order the Secretary to terminate federal funding to the University of California at Santa Cruz ("UCSC"). Despite now being afforded multiple opportunities to do so, YAF fails point to any waiver of sovereign immunity that would permit judicial review of the Secretary's enforcement decision under the Solomon Amendment. YAF's latest submission is long on rhetoric, but short on any meaningful discussion of Heckler v. Chaney, 470 U.S. 821 (1985) or the cases from this Circuit recognizing that an agency's decision to investigate and enforce are matters of agency discretion not subject to review under Section 701(a)(2) of the Administrative Procedure Act ("APA").

YAF's discussion of standing is equally lacking. While YAF certainly has the prerogative to keep its membership list secret, it cannot at the same time claim standing where that decision denies the Court of its ability to assure itself that it has a live, justiciable controversy before it. Without an identification of the members YAF purports to represent, and a description of each member's harm, the threshold showing of injury-in-fact cannot be made.

Nor has YAF shown redressability. Despite its conclusory allegations to the contrary, YAF cannot say that terminating federal funding to the UCSC will quell the student and faculty protests that have allegedly blocked military recruiters. To the extent history is any guide, the opposite is more likely. UCSC has an established, written policy permitting recruiter access. And despite that, student and faculty protesters have acted contrary to the institution's will. There is no reason to believe that such students will cease their opposition to the military's employment practices because the UCSC may lose its federal funding. While that may be possible in a case such as the one involving Yale Law School, where the institution itself blocked access, it is not the case here where compliance requires the cooperation of third-parties not before the Court.

      For any one of these reasons, the action set forth in the amended complaint should be dismissed.

## ARGUMENT

**I.**     **The Secretary's Decision Is Not Subject To Judicial Review**

      While again relying exclusively upon the APA as the only statute that purportedly waives sovereign immunity, YAF fails to demonstrate how the Secretary's decision not to terminate federal funding can be reviewed under Section 701(a)(2). As noted in the Secretary's initial and renewed motions to dismiss, the APA expressly precludes judicial review of agency action "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). This applies to the Secretary's decision whether to undertake enforcement action under the Solomon Amendment. The Supreme Court has recognized "over many years that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an

agency's absolute discretion." <u>Heckler v. Chaney</u>, 470 U.S. 821, 831 (1985) (citations omitted). An agency's discretion when making decisions to prosecute or enforce "is attributable in no small part to the general unsuitability for judicial review of . . . decisions to refuse enforcement." <u>Id</u>.

Perhaps recognizing the weight of this authority, YAF attempts to refashion its argument as one that challenges the Secretary's alleged unwillingness to "investigate" whether UCSC is in compliance with the Solomon Amendment. YAF Sur Reply at 1 (emphasis in original). But the principle set forth in <u>Chaney</u> does not depend upon semantics. The Court in <u>Chaney</u> expressly recognized that an agency's refusal "to institute investigative or enforcement proceedings" are both presumed immune from judicial review. <u>See</u> <u>also</u> <u>Sprint Communications v. FCC</u>, 76 F.3d 1221, 1231 (D.C. Cir. 1996)(agency's "decision whether to investigate is an 'agency action . . . committed to agency discretion by law.'" ) (quoting Section 701(a)(2)). Nothing in the Solomon Amendment addresses what type of investigation is necessary. That is left to the implementing regulations, which requires confirmation that the institution has an established, written policy of permitting recruiter access. 32 C.F.R.§ 216.5(b)(1)(i). UCSC has such a policy. <u>See</u> <u>http://www.ucop.edu/raohome/cgmemos/94-09.html.</u>

Because no waiver of sovereign immunity exists, the Court should dismiss the action. There is no subject-matter jurisdiction to hear the claim presented in the amended complaint.

## II.     YAF Continues to Fail to Demonstrate Associational Standing

### A.     Injury-in-Fact Must Be Demonstrated, Not Just Alleged

To establish associational standing, YAF must demonstrate as a threshold matter that "its members would otherwise have standing to sue in their own right[.]" Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977); see also National Wrestling Coaches Ass'n v. Department of Educ., 366 F.3d 930, 937 (D.C. Cir. 2004) (same).  And to satisfy that initial burden, YAF "must show that at least one **specifically-identified** member has suffered an injury-in-fact." American Chem. Council v. Department of Transp., 468 F.3d 810, 820 (D.C. Cir. 2006) (emphasis added); see also American Immigration Lawyers Assoc. v. Reno, 18 F. Supp. 2d 38, 51 (D.D.C. 1998) (recognizing that associational plaintiff's obligation to show that one or more of its members have suffered harm "extends to identifying the member or members of plaintiff organizations that have, or will suffer, harm.").  YAF has failed to carry its burden in this regard.

By failing to identify by name a single YAF member who has been denied access to a military recruiter, YAF has failed to demonstrate that a live, justiciable controversy exists.  YAF argues in response that it "is not required to reveal its membership list" at this stage in the proceedings, and that its generalized allegations of harm suffice.  YAF Sur Reply, at 3.  This assertion of law is not based upon any case from this Circuit, which, as noted above, reject such a notion.  Rather, the claim is based upon Forum for Academic and Institutional Rights v. Rumsfeld, 291 F. Supp. 2d 269, 287 (D.N.J. 2003), in which the district court stated that "it is enough for the representational entity to allege that one of its members or constituents has suffered an injury that would allow it to bring suit in its own right."  This statement is *dictum*.  Although YAF fails to bring this to the Court's attention, the district court in FAIR went on to

explain that two of the associational plaintiff's member law schools identified themselves in the complaint (id. at 289) and explained their harm, id., rendering this statement unnecessary.  It is that identification and a description of individualized harm that is lacking in YAF's amended complaint.

While YAF claims that such an identification and description are unnecessary, each is critical to proving injury-in-fact.  YAF simply alleges that it has 13 students who are currently enrolled at the UCSC, Amended Compl., ¶ 5, and that "[a]pproximately" six of those students would like to meet and interview with military recruiters at job fairs conducted by UCSC, id. ¶6.  YAF refuses, however, to identify any of these six students by name, explain the interest each has in meeting with a military recruiter, and how each student has been denied that access because of student and faculty protests.  It is telling that YAF cannot even say which of the six unidentified students who purportedly have an interest in the military have been denied the opportunity to meet with a recruiter:  The best that it can offer is the claim in its previous submission that "[a]t least one of [its] members, who sought to meet with military recruiters, has attended a UCSC job fair since April 2005 at which military recruiters were not present."  YAF's Opp. (Dkt. # 11) at 13.  But this at most suggests that only one student has been denied access, and there is no explanation as to how the protests have denied even that single unidentified student of an opportunity to meet with a recruiter on campus.  YAF has thus failed to that any of its members could bring this action.  The action must be dismissed for this additional, independent reason.

### B.  YAF Has Also Failed to Show that Protests Can Be Stopped By Terminating Federal Funding To UCSC

The deficiencies in the amended complaint do not end with YAF's failure to prove injury-in-fact.  They extend to YAF's failure to prove that the requested relief  -- termination of federal funding to the UCSC -- will quell student and faculty protests.   When, as here, causation and redressablity hinge on the response of others, "[i]t becomes the burden of the plaintiff to adduce facts showing that  . . . choices [of the independent actors] have been or will be made in such manner as to produce causation and permit the redressability of the injury." Renal Physicians Ass'n v. HHS, 489 F.3d 1267, 1273 (D.C. Cir. 2007)(quoting Lujan, 504 U.S. at 562).  YAF ignores this.

YAF's continued reliance upon the Yale Law School example for its prediction that the termination of federal funding will quell student and faculty protests (Sur Reply, at 4), suggests that it might not even be aware of the dynamic present in this case.  Unlike the Yale Law School example, in which the law school was a direct recipient of federal funding and refused to comply with the terms and conditions of the Solomon Amendment, the students and faculty whose actions YAF seeks to impact through the termination of funding are not direct recipients of federal funding.  There is thus no way of predicting the impact that terminating federal funding to UCSC will have on the behavior of students and faculty.  Indeed, given that such students and faculty have allegedly acted contrary to the institution's established written policy permitting equal access to recruiters, the better prediction is to assume that such students and faculty would care little about federal funding and would continue on with their actions.  YAF's "'unadorned speculation'" that threatening to terminate federal funding to the UCSC will stop the protests of student and faculty members who are not before the Court "'will not suffice to invoke the federal

6

judicial power[,]'" National Wrestling Coaches Ass'n v. Department of Educ., 366 F.3d 930, 938 (D.C. Cir. 2004) (quoting Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 44 (1976)).

## CONCLUSION

The action set forth in YAF's amended complaint should be dismissed. YAF cannot point to any statute that would permit review, or establish that it has associational standing to bring this claim on behalf of the UCSC students it claims are its members but refuses to identify. YAF also cannot show that terminating federal funding will redress its members' purported harm.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

VINCENT M. GARVEY
Deputy Branch Director

/s/ Paul G. Freeborne
PAUL G. FREEBORNE
Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW,
Washington, D.C. 20530
Tel: (202) 353-0543
Fax: (202) 616-8460
paul.freeborne@usdoj.gov

February 1, 2008                                    *Counsel for the Federal Defendant*